Kevin T. Lafky, OSB #852633
klafky@lafky.com
LAFKY & LAFKY
429 Court Street NE
Salem, OR 97301
Tel: (503)585-2450
Fax: (503)585-0205
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| KEVIN BRATCHER,<br><br>        Plaintiff,<br><br>  v.<br><br>POLK COUNTY, CITY OF SALEM, DEPUTY MICHAEL H. SMITH, in his individual capacity, and DOES 1-4, in their individual capacity;<br><br>        Defendants.<br>_____ | Case No. 3:20-cv-2056<br><br>COMPLAINT– ASSAULT, BATTERY, NEGLIGENCE, INTENTIONAL INFLICTION OF MOTIONAL DISTRESS UNDER OREGON TORT CLAIMS ACT; 42 USCA Sec. 1983 - 4th Amendment Violations<br><br>(Demand for Jury Trial; Not Subject to Mandatory Arbitration) |

Plaintiff Kevin Bratcher alleges, at all material times herein:

**PARTIES**

1.

Plaintiff Kevin Bratcher (hereafter "Plaintiff") is a resident of Polk County, Oregon.

2.

Defendant Polk County is a municipal entity and subdivision of the State of Oregon that operates the Polk County Sheriff's Office.

Page 1 of  14 - COMPLAINT

3.

Defendant City of Salem is a local governmental entity who employed Defendants DOES 1- 4 in the allegations set forth below.

4.

At all material times, Defendant Michael H. Smith (hereafter "Deputy Smith") was an individual acting within the course and scope of his employment with the Polk County Sheriff's Office and under color of law.

5.

At all material times, Defendants DOES 1 - 4 were individuals acting within the course and scope of their employment with Defendant City of Salem and under color of law. At this point in time, the true names of DOES 1 - 4 are unknown. Plaintiff shall seek leave to amend this Complaint to designate each DOE with his or her real name when their identities are ascertained.

## JURISDICTION

6.

Plaintiff asserts claims for violation of his Fourth Amendment right to be secure from unreasonable search and seizure under 42 U.S.C. § 1983. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction, and brought pursuant to claims under 42 U.S.C. § 1983.

7.

Plaintiff also asserts state law claims for Assault, Battery, Negligence, and Intentional Infliction of Emotional Distress. This court has supplemental jurisdiction over Plaintiff's state

law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

8.

Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in Polk County, Oregon.

## TORT CLAIMS NOTICE

9.

Pursuant to ORS 30.275, Plaintiff satisfied the Oregon Tort Claims Act requirements by sending, through certified mail, a tort claims notice to the Polk County Counsel and the Salem City Attorney on December 3, 2019, which was within 180 days after the alleged loss or injury.

## FACTUAL ALLEGATIONS

10.

On or about September 6, 2019, Plaintiff was lawfully and peaceably situated at his residence located at 2701 Roosevelt Loop NW, Salem, Oregon 97304 when Deputy Smith arrived to effectuate service of a small claims summons.

11.

Plaintiff repeatedly asserted that the named party of the small claims summons, his spouse Keely Bratcher (hereafter "Mrs. Bratcher"), was not home and she was unavailable to accept service.

Page 3 of 14 - COMPLAINT

Deputy Smith left the residence, but returned shortly after and again attempted to serve Plaintiff with the summons related to Mrs. Bratcher.

12.

Although Plaintiff had asserted he would not accept service on Mrs. Bratcher's behalf, Deputy Smith proceeded to throw the documents for service into Plaintiff's home, indicating to Plaintiff that Mrs. Bratcher should be considered served. This was while Plaintiff was trying to close his door and end his exchange with the deputy. Plaintiff had no indication as to whether the process Deputy Smith engaged in should be considered proper service and Plaintiff proceeded to throw the documents back out onto the porch, remaining entirely within his own property.

13.

After Plaintiff had retrieved the documents from his property and tossed them into the air once more, remaining entirely within his own property, Deputy Smith responded with a use of force entirely disproportional to the conduct exhibited by Plaintiff. Although Plaintiff returned to his home after this exchange, Deputy Smith pursued Plaintiff on his property, kicking in Plaintiff's front door, tackling Plaintiff to the ground causing injury, and arresting him for "Offensive Littering" pursuant to ORS 164.805 and "Interfering with a Police Officer" pursuant to ORS 162.247.

14.

Prior to effectuating the arrest, Deputy Smith threatened Plaintiff on multiple occasions to use his taser, despite Plaintiff's attempted compliance with Deputy Smith's orders. Plaintiff's interaction with Deputy Smith occurred entirely within Plaintiff's property and the papers served never left the confines of Plaintiff's property. Additionally, Plaintiff is a disabled veteran with Post-

Traumatic Stress Disorder ("PTSD"), and Deputy Smith's continual threats to use additional force after tackling Plaintiff to the ground were particularly damaging and stressful to Plaintiff.

15.

Not long after the use of force executed by Deputy Smith, DOES 1- 4 arrived at the scene to assist Deputy Smith in the wrongful arrest and seizure of Plaintiff.

16.

Plaintiff was handcuffed and detained in Deputy Smith's patrol car, only later being released and cited at the order of an on-duty Sergeant. The altercation between Plaintiff and Deputy Smith resulted in extensive property damage to the Plaintiff's home by kicking in the door and injury to Plaintiff through the use of force to effectuate the arrest. The District Attorney's office for Polk County did not pursue any of the charges brought against Plaintiff.

17.

An hour after the incident occurred, Deputy Smith's Duty Sergeant checked in with Plaintiff regarding his injuries and disclosed to Plaintiff that the service Deputy Smith was attempting to effectuate was unnecessary as the issue had been resolved a month prior. For this reason, the service request Deputy Smith was performing had been pulled, as Plaintiff had tried to discuss with him during their exchange.

18.

After the incident, Plaintiff presented to a health clinic with acute swelling, bruising, and pain in his left foot. Plaintiff was placed in a walking boot due to concerns of acute fractures. Injuries to his left toe did not improve and a significant amount of blood and pus were trapped under his toenail, requiring it to be removed.

19.

As a result of Defendants' unlawful conduct, Plaintiff suffered economic damages in the form past and future medical expenses, in an amount to be proven with particularity at trial. Plaintiff has also incurred economic damages, which is alleged to be approximately $2,500, to repair the damage done to his house by Deputy Smith.

20.

Plaintiff has also suffered non-economic damages in the form of severe pain, suffering, and emotional distress in an amount to be proven with particularity at trial. Plaintiff's mental anguish due to the events that occurred between himself and the Defendant's agents cannot be understated and has been increasingly pervasive in his life, exacerbating symptoms he had experienced prior to the incident. Plaintiff is a war veteran and suffers from PTSD due to his service. As a result of the actions of Defendants, Plaintiff's disorder re-triggered and became increasingly severe since then. In his current state, Plaintiff has difficultly sleeping and is in a state of constant fear and hyper-vigilance at the threat of further abuse from law enforcement. These symptoms worsened due to the property damage to Plaintiff's door, robbing him of a sense of security in regards to his home. For weeks after the incident, Plaintiff and his family felt the lack of security as it would be easy for any person intending to do them harm to break in through the door. After the incident Plaintiff had just suffered, the fear of an attacker breaking in through the door felt all to real and contributed to his severe mental anguish.

21.

Furthermore, through the actions of the Defendants, Plaintiff had his pre-existing bilateral carpal tunnel syndrome abruptly worsen and his symptoms were exacerbated to a painful degree.

Prior to the altercation, Plaintiff handled his symptoms well and it did not seem as though he would need surgery. However after this incident occurred, Plaintiff's arms were constantly numb, painful, and he would often wake in the middle of the night due to these injuries. While constructive management treatment was undergone along with steroid treatment, these ultimately proved unsuccessful and surgery was required. These injuries were entirely avoidable and inflicted upon Plaintiff with no actual provocation of those responsible.

### **FIRST CLAIM - ASSAULT - AGAINST DEFENDANT POLK COUNTY**

22.

Plaintiff re-alleges and incorporates paragraphs 1 through 21 herein by this reference.

23.

Defendant Polk County, by and through its employee Deputy Smith, acted in such a manner that Deputy Smith intended to cause harmful or offensive contact with Plaintiff and put him in an imminent apprehension of such conduct occurring. Through the aforementioned conduct, Deputy Smith placed Plaintiff in an imminent apprehension of harmful or offensive contact occurring through his use of force to enter the premise of Plaintiff and tackle him to the ground.

24.

After Plaintiff's exchange with Deputy Smith, he was pursued after tossing the paperwork handed to him upon his own property. Deputy Smith had pursued Plaintiff to his door and when Plaintiff shut the door, Deputy Smith proceeded to kick open the door and tackle Plaintiff to the ground. Plaintiff is a disabled veteran who suffers from PTSD who had every reason to believe Deputy Smith would follow through with the offensive contact upon having his door kicked in. Deputy Smith proceeded to threaten Plaintiff multiple times with his taser, even though Plaintiff had

attempted to comply with Deputy Smith. Through these actions, it is clear Deputy Smith intended to place Plaintiff in an imminent apprehension of an offensive conduct occurring, and his actions placed Plaintiff in said imminent apprehension.

25.

Plaintiff has suffered immensely due to the actions described above and it has resulted in physical injury, emotional distress and mental distress that has permeated through all facets of his life. Plaintiff has suffered economic damages in an amount to be proven at trial and non-economic damages in the amount of $500,000.

## SECOND CLAIM - BATTERY - AGAINST DEFENDANT POLK COUNTY

26.

Plaintiff re-alleges and incorporates paragraphs 1 through 25 herein by this reference.

27.

Defendant Polk County, by and through its employee Defendant Deputy Smith, acted in such a manner that Deputy Smith intended to cause harmful or offensive contact with Plaintiff and followed through this intention by proceeding to tackle Plaintiff to the ground.

28.

Through Plaintiff's exchange with Deputy Smith, he was pursued after tossing the paperwork handed to him upon his own property. Deputy Smith had pursued Plaintiff to his door and when Plaintiff shut the door, Deputy Smith proceeded to kick open the door and tackle Plaintiff to the ground. After tackling Plaintiff to the ground and subduing him, Deputy Smith proceeded to place hand-cuffs on Plaintiff and place him in the back of his patrol car with the aide of City of Salem

Police Officer Does 1 - 4. Through these actions, the elements are met as Deputy Smith pursued Plaintiff into his home, kicked his door open, and tackled him to the ground.

29.

Plaintiff has suffered immensely due to the actions described above and it has resulted in physical injury, emotional distress and mental distress that has permeated through all facets of his life. Plaintiff has suffered economic damages in an amount to be proven at trial and non-economic damages in the amount of $500,000.

### THIRD CLAIM - NEGLIGENCE - AGAINST DEFENDANT POLK COUNTY

(Failure to Maintain and/or Follow Adequate Policies and Procedures)

30.

Plaintiff re-alleges and incorporates paragraphs 1 through 29 herein by this reference.

31.

Defendant Polk County, by and through its employees and/or agents acting under color of law, had a duty to maintain and/or follow adequate proper policies and procedures.

32.

Deputy Smith failed to use the degree of care and judgment that would have been used by reasonably careful officers when he did not follow the proper policies and procedures for effectuating an arrest when charging Plaintiff with Offensive Littering and Interfering with a Police Officer. By kicking in Plaintiff's door and tackling him to the ground without any clear provocation to do so, Deputy Smith ignored the conduct that any reasonable officer in his position would have taken.

33.

Deputy Smith's conduct was the direct and proximate cause of Plaintiff's injuries. Plaintiff's harm was foreseeable as a result of Deputy Smith's conduct because a reasonable deputy would know, or should have known, that kicking in a suspect's door and tackling them to the ground for a nonviolent offense was not appropriate. This was a clear demonstration of proper policies and procedures not being adequately followed when pursuing a suspect for the charges Deputy Smith was looking to pursue.

34.

Plaintiff has suffered immensely due to the actions described above and it has resulted in physical injury, emotional distress and mental distress that has permeated through all facets of his life. Plaintiff has suffered economic damages in an amount to be proven at trial and non-economic damages in the amount of $500,000.

## **FOURTH CLAIM - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - AGAINST DEFENDANT POLK COUNTY**

35.

Plaintiff re-alleges and incorporates paragraphs 1 through 34 herein by this reference.

36.

Defendant Polk County, by and through its employee Deputy Smith, acted in such a manner as to inflict severe emotional distress upon Plaintiff. By kicking in Plaintiff's door, tackling him to the ground, and continually threatening to tase him, Deputy Smith intended to inflict emotional distress on Plaintiff for seemingly disobeying and not acquiescing to his service attempt.

37.

Through his pursuit of Plaintiff on Plaintiff's property, Deputy Smith was the direct and proximate cause of the severe emotional distress suffered by Plaintiff. Prior to the incident, Plaintiff was lawfully and peaceably residing within his home until Deputy Smith returned to the home to attempt service. But for Deputy Smith kicking open the door, tackling Plaintiff and threatening to tase him, there would not be the emotional distress Plaintiff is currently suffering through. As stated above, the events that transpired have had an adverse impact on his well-being for not only himself, but his family as well. Deputy Smith knew or should have known that his actions could have caused severe emotional distress for Plaintiff.

38.

By breaking through Plaintiff's door to effectuate an arrest for Offensive Littering on Plaintiff's own property, it is clear that Deputy Smith's actions were of the kind to constitute an extraordinary transgression of the bounds of socially tolerable conduct. There are, or should be, proper processes to dictate how a deputy in Deputy Smith's position should act and these were ignored for the apparent purpose of causing undue harm to Plaintiff.

39.

Plaintiff has suffered immensely due to the actions described above and it has resulted in emotional and mental distress that has permeated through all facets of his life. Plaintiff has suffered economic damages in an amount to be proven at trial and non-economic damages in the amount of $500,000.

## FIFTH CLAIM - VIOLATION OF 42 U.S.C.§1983 - AGAINST SMITH AND DOES 1-4

(42 USC § 1983 - Fourth Amendment)

40.

Plaintiff re-alleges and incorporates paragraphs 1 through 39 herein by this reference.

41.

42 U.S.C. § 1983 provides that any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress..."

42.

At all times material to this complaint, Deputy Smith and DOES1 through 4 acted or purported to act under color of law and within the course and scope of their employment.

43.

Under the United States Constitution, Plaintiff has a Fourth Amendment right to be secure in his person from either unreasonable search or seizure. Deputy Smith and DOES1-4, acting under color of law, deprived Plaintiff of his right to be free from unreasonable search and/or seizure when Deputy Smith kicked open Plaintiff's door, tackled him, and threatened to tase him repeatedly and DOES1-4 participated in the unlawful arrest. The officers in question, acting under the authority of their requisite governmental entities, acted intentionally or recklessly, maliciously, and with callous indifference to Plaintiff's constitutional rights.

44.

As a direct, proximate, and foreseeable result of all claims for relief alleged herein, Plaintiff suffered non-economic damages in the form of mental suffering, emotional duress, fear, anxiety, severe inconvenience, and loss of liberty.

45.

As a result of the conduct of Deputy Smith and DOES 1-4 in assisting the unlawful arrest, there have been violations of 42 U.S.C. § 1983 that resulted in the suffering of non-economic damages in an amount to be determined at trial, but alleged to be $500,000. Plaintiff seeks equitable relief in addition to reasonable attorneys fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff requests the following for his claims for relief:

    1. For Plaintiff's First Claim of Relief against Defendant Polk County: Plaintiff suffered economic damages in an amount to be determined at trial. Plaintiff suffered non-economic damages in the form of physical injury, emotional distress, and mental distress in the amount of $500,000;

    2. For Plaintiff's Second Claim of Relief against Defendant Polk County: Plaintiff suffered economic damages in an amount to be determined at trial. Plaintiff suffered non-economic damages in the form of physical injury, emotional distress, and mental distress in the amount of $500,000;

    3. For Plaintiff's Third Claim of Relief against Defendant Polk County: Plaintiff suffered economic damages in an amount to be determined at trial. Plaintiff suffered non-economic damages in the form of emotional distress, and mental anguish in the amount of $500,000;

4. For Plaintiff's Fourth Claim of Relief against Defendant Polk County: Plaintiff suffered economic damages in an amount to be determined at trial. Plaintiff suffered non-economic damages in the form of emotional distress and mental anguish in the amount of $500,000;

5. For Plaintiff's Fifth Claim of Relief against Smith and Does 1-4: Plaintiff suffered economic damages in an amount to be determined at trial. Plaintiff suffered non-economic damages in the form of physical injury, emotional distress, and mental distress in the amount of $500,000 and economic damages in the amount of $2,500 to be paid for damage to Plaintiff's property;;

6. Expert witness fees, interest, costs and reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

7. Any other relief this court deems just and equitable.

DATED this 23rd day of November, 2020.

                                                s/ Kevin T. Lafky
                                                Kevin T. Lafky, OSB#852633
                                                LAFKY & LAFKY
                                                429 Court Street NE
                                                Salem, OR 97301
                                                (503)585-2450
                                                Of Attorney for Plaintiff