**Jennifer M. Gaddis**, OSB No. 071194
jgaddis@cityofsalem.net
City of Salem, Legal Department
555 Liberty St. SE, Room 225
Salem, Oregon 97301
Telephone: (503) 588-6003
Facsimile: (503) 361-2202
    Attorney for City Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KEVIN BRATCHER,<br><br>    Plaintiff,<br><br>    v.<br><br>POLK COUNTY, CITY OF SALEM, DEPUTY MICHAEL H. SMITH, in his individual capacity, and DOES 1-2, in their individual capacity,<br><br>    Defendants. | Case No. 3:20-CV-02056-SB<br><br>**DEFENDANT CITY OF SALEM'S MOTION FOR SUMMARY JUDGMENT**<br><br>Request for Oral Argument |

## LR 7-1 CERTIFICATION

Pursuant to LR 7-1, the undersigned certifies that she has made a good faith effort to confer with plaintiff telephonically but has been unable to do so. Counsel called plaintiff's cell phone number and left a voicemail but has not received a call back. Counsel also emailed plaintiff but has not received a response.

## MOTION

Defendant City of Salem ("City defendants") moves the Court under Fed. R. Civ. P. 56 for Summary Judgment against plaintiff on all claims against the City and unidentified John Does 1

and 2 on the grounds that there is no genuine issue as to any material fact and defendants are entitled to judgment as a matter of law.

In support of this Motion, the City defendants rely on:

1. The pleadings on file;
2. The Declaration of Jason Donner;
3. The Declaration of Chad Galusha;
4. The Memorandum of Law below.

## MEMORANDUM OF LAW

This case involves claims against Polk County, Polk County Deputy Michael Smith, the City, and two unidentified City John Does. These claims arise from an incident in 2019 when Deputy Smith attempted to serve plaintiff with a civil subpoena. Plaintiff alleges a §1983 – Fourth Amendment claim and two state tort claims for Assault and Battery against City defendants. Based on the undisputed facts of this case, plaintiff cannot support his claims against the City defendants, and his claims should be dismissed. Further, the unidentified City John Does should be granted qualified immunity on plaintiff's federal claim.

## UNDISPUTED RELEVANT FACTS

On September 6, 2019, at 11:12 a.m., Deputy Smith ("Smith") made a "code 3" request for cover and told dispatch that he was dealing with a suspect who was actively resisting. (Donner Dec. ¶¶ 2-3; Galusha Dec. ¶¶ 2-3). A request for code 3 cover among law enforcement means that the requesting officer is asking for backup to arrive with active lights and sirens on their vehicles. (Donner Dec. ¶ 4; Galusha Dec. ¶ 4). It indicates that a law enforcement officer is in a high-risk situation and needs assistance right away. (Donner Dec.¶ 5; Galusha Dec. ¶ 5). At 11:13 a.m., City police officers Jason Donner ("Sgt. Donner") and Chad Galusha ("Ofcr. Galusha") responded that they were en route to assist Smith. Donner arrived on scene moments before Galusha, just under

four minutes after Smith requested code 3 cover. (Donner Dec. ¶¶ 6-7; Galusha Dec. ¶¶ 6-7).

Upon entering the residence, the City law enforcement officers observed a chaotic scene. The door of the residence was off its hinges and pieces of it and other household items were strewn about the entryway of the residence, they heard plaintiff yelling and Deputy Smith had his taser out of its holster. (Donner Dec. ¶ 8; Galusha Dec. ¶ 8). The officers noticed that the arrested suspect, plaintiff, was handcuffed in the front. This concerned them because it is inconsistent with proper handcuff placement in typical arrest situations under Salem Police Department guidelines. Handcuffing a suspect in the front of their body allows them to have movement and control of their arms. This can create the opportunity for a violent suspect to harm law enforcement officers or others. (Donner Dec. ¶ 9; Galusha Dec. ¶ 9). At Deputy Smith's request, Sgt. Donner assisted Deputy Smith with transporting plaintiff to Deputy Smith's patrol vehicle. (Donner Dec. ¶ 10; Galusha Dec. ¶ 10). Sgt. Donner held onto plaintiff's left arm, to maintain control of him as the three men walked to Deputy Smith's vehicle. (Donner Dec. ¶ 11). Given that plaintiff had been handcuffed in the front of his body and Sgt. Donner understood he had just actively resisted arrest by Deputy Smith, it was important that Sgt. Donner hold onto plaintiff's bicep in order to maintain control over him. (Donner Dec. ¶ 11). Shortly after assisting Deputy Smith with placing plaintiff in the Polk County vehicle, Sgt. Donner and Ofcr. Galusha cleared the scene. (Donner Dec. ¶ 13; Galusha Dec. ¶ 12).

Plaintiff filed his First Amended Complaint on May 12, 2021, following the City's Motion to Dismiss for plaintiff's failure to state a claim. (Dkt. 19). Plaintiff's counsel deposed the two involved City law enforcement officers on November 19, 2021. (Donner Dec. ¶ 14; Galusha Dec. ¶ 13). The close of discovery was December 27, 2021. (Dkt. 28).

///

///

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"A Summary Judgment Motion cannot be defeated by relying solely upon conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). It is only the material facts that come into play. A fact is "material" when it is relevant to an element of a claim or when its existence might affect the outcome of the suit. *TW Elec. Service Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the non-moving party's facts, together with undisputed background or contextual facts, do not show the non-moving party to be justified to a jury verdict in its favor, summary judgment is appropriate. *Id.* at 631. Summary judgment is mandated where the facts and the law will reasonably support only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). One of the principal purposes of a summary judgment procedure is to isolate the disposal of claims that are not factually supported and the rule is to be interpreted to accomplish this purpose. *Celotex*, 477 U.S. at 323-24. The "mere existence of a scintilla of evidence in support of plaintiff's positions [is] insufficient." *Anderson*, 477 U.S. at 252. Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587.

## ARGUMENT

**I.  Plaintiff Failed to Allege Unlawful Conduct by Named City Defendants**

Plaintiff filed his First Amended Complaint on May 12, 2021, following the City's Motion to Dismiss for plaintiff's failure to state a claim. (Dkt. 19). Although plaintiff has named the Polk County Sherriff's Deputy involved in the case from the beginning, he has failed to identify the two City defendants by name. "As a general rule, the use of 'John Doe' to identify a defendant is not favored. *See Wiltsie v. California Department of Corrections*, 406 F.2d 515, 518 (9th Cir.1968). *Gillespie v. Civiletti*, 629 F2d 637, 642 (9th Cir 1980). Plaintiff's counsel deposed the two involved City law enforcement officers on November 19, 2021.  The close of discovery in this matter occurred on December 27, 2021. (Donner Dec. ¶ 14; Galusha Dec. ¶ 13; Dkt. 28). Pursuant to Fed. R. Civ. P. 15A, a party may amend their pleading once as a matter of course; however, "in all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." The City would object to further amendments of plaintiff's complaint at this point in the proceedings. *Nguyen v. Saxon Mortg. Servs.*, No. CV-10-353-HZ, 2011 US Dist LEXIS 71070, at *8 (D Or June 28, 2011) ("an amended complaint is [generally] not permitted after the close of discovery and after a motion for summary judgment has been filed".), *citing Howard v. Klika*, No. Civ.03-792-AA, 2004 U.S. Dist. LEXIS 9637, 2004 WL 2966911, at *1 (D. Or. 2004)).

In order to state a claim under section 1983, a plaintiff must allege facts showing a Constitutional violation or federal law violation by a person acting under color of state law. *Kato v. Newport Sheriff's Dep't*, Civil No. 93-202-FR, 1993 US Dist LEXIS 15584, at *2-4 (D Or Oct. 29, 1993). "'Liability under section 1983 arises *only* upon a showing of *personal participation by the defendant*' in the alleged constitutional deprivation." (emphasis added) *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) ("liability under section 1983 can be established by showing that the

defendant personally participated in a deprivation of the plaintiff's rights, or caused such a deprivation to occur"); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff failed to name the involved City defendants in this case and has also failed to allege the personal participation of either City law enforcement officer in the alleged unlawful conduct. Plaintiff does not allege any federal claims against the City; his sole §1983 claim arises out of conduct attributed to "John Does 1-2." For the foregoing reasons, the City's Motion for Summary Judgement should be granted and plaintiff's federal claims against John Does 1-2 should be dismissed.[1]

## II.   Federal Claim

Plaintiff's allegations still fail against City defendants as a matter of law should the court find that plaintiff's First Amended Complaint is sufficient in pleading particular participation of specific City law enforcement officers.

### A.   §1983 Claim – Fourth Amendment

In the fifth claim of plaintiff's First Amended Complaint, he alleges "* * * DOES 1-2, acting under color of law, deprived Plaintiff of his right to be free from unreasonable search and/or seizure when * * * DOES 1-2 confiscated Plaintiff's property, threw it across the room, left visible injuries on Plaintiff's person without provocation, and forced Plaintiff to walk a great distance on an injury that further exacerbated his pain." (FAC ¶ 43).

Claims of unlawful seizure through use of excessive force are analyzed under the Fourth

---

[1] Should the court grant the City's motion on this claim, the court would no longer have subject matter jurisdiction against the City, as the remaining claims against the City are state tort claims. However, the court could still exercise supplemental jurisdiction.

Amendment's "reasonableness" standard, using the Supreme Court's framework set forth in *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989). The objective reasonableness standard balances: (1) "the nature and quality of the intrusion on an individual's Fourth Amendment interests," against (2) "the countervailing governmental interests at stake." *Id.*

> "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See *Tennessee v. Garner,* 471 U.S., at 8–9, 105 S.Ct., at 1699–1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure [or force]").

*Id.*

1.     **The "seizure" of plaintiff, by Salem officers was reasonable**

The Ninth Circuit held a Fourth Amendment "seizure" occurs when an officer's intentional conduct aimed toward an individual or group causes physical force on an individual and terminates their movement. *Nelson v. City of Davis*, 685 F.3d 867, 877 (9th Cir. 2012). Even if plaintiff could establish that a City law enforcement officer was the cause of scratch marks on his arm, such an injury was certainly unintentional, and the force used was reasonable. The objective reasonableness standard in *Graham* balances: (1) "the nature and quality of the intrusion on an individual's Fourth Amendment interests," against (2) "the countervailing governmental interests at stake." 490 U.S. at 396.

   a. *Nature and Quality of Intrusion*

City law enforcement officers arrived at a chaotic scene, after receiving a code 3 call for help. (Donner Dec. ¶¶ 2-8; Galusha Dec. ¶¶ 2-8) Upon arrival, they observed the door of the residence off of its hinges and broken inside the residence. (Galusha Dec. ¶ 8). They saw Deputy Smith with his taser out of the holster and heard plaintiff yelling at Deputy Smith. (Donner Dec. ¶

8; Galusha Dec. ¶ 8). They noted that plaintiff had already been arrested and was handcuffed in the front, a practice inconsistent with their own department's guidelines, due to safety concerns. This contributed to their apprehension about plaintiff's ability to injure them or Deputy Smith. (Donner Dec. ¶ 9; Galusha Dec. ¶ 9).

Plaintiff contends that a City law enforcement officer deprived plaintiff of his right to be free from unreasonable search and or seizure when he "confiscated plaintiff's property" and "threw it across the room." (FAC ¶ 43). At deposition, plaintiff testified that a City law enforcement officer confiscated his cell phone and simulator and tossed them to the floor. (Gaddis Dec. Ex. 1 Bratcher Dep. 129:11-15). He also testified that there was no damage done to his cell phone or his simulator. (Gaddis Dec. Ex. 1 Bratcher Dep. 113:15-17). The officer's exercise of control over plaintiff's property was lawful because plaintiff was in custody and it was not unreasonably forceful, nor did it cause any damage.

Plaintiff also contends that the City law enforcement officer violated this right when he "left visible injuries on plaintiff's person without provocation." (FAC ¶ 43). Although technically a use of force, small fingernail scratches are significantly below the level of force typically analyzed in these types of cases. During their extremely brief interaction with plaintiff, one City law enforcement officer assisted Deputy Smith in transporting plaintiff outside his residence and to Deputy Smith's patrol car. (Donner Dec. ¶ 10). Both the City law enforcement officer and plaintiff testified at deposition that the City law enforcement officer held onto plaintiff's left bicep. (Gaddis Dec. Ex. 1 Bratcher Dep. 67:21-25-68:1-4; Donner Dec. ¶ 11). Grasping an arrested suspect's bicep, even firmly, under the circumstances known to the City law enforcement officers at the time constitutes a reasonable use of force.

///

///

PAGE 8 – DEFENDANT CITY OF SALEM'S MOTION FOR SUMMARY JUDGMENT

At the time of plaintiff's deposition, he couldn't recall when the scratch marks were allegedly caused by the City defendant. He testified:

> Q: Okay. And it appears that Salem PD is trailing slightly behind you in the video. Is that correct?
>
> A: It looks that way, yes, ma'am.
>
> Q: And probably not easy for three grown men to fit through a doorway at once?
>
> A: No. It's not a very wide space right there.

(Gaddis Dec. Ex. 1 Bratcher Dep. 115:17-23)

> Q: Is it possible that those marks could have been caused when they were trying to fit through a door that was not very wide?
>
> A: I don't know, ma'am.
>
> Q: Is it possible?
>
> A: Could be. Maybe.
>
> Q: But certainly you don't remember a particular moment where the Salem officer –
>
> A: No.
>
> Q: -- purposely caused those marks to you.
>
> A: No.

(Gaddis Dec. Ex. 1 Bratcher Dep. 133:17-25).

Finally, plaintiff contends that a City law enforcement officer deprived him of his right to be free from unreasonable search and or seizure when he "forced plaintiff to walk a great distance on an injury that further exacerbated his pain." (FAC ¶ 43). Plaintiff explained at his deposition that the injury he was referring to was an injury to his foot. (Gaddis Dec. Ex. 1 Bratcher Dep. 89:8-25-90:1-6). At deposition, he testified:

> Q: All right. Here it indicates you had difficulty walking, but a few minutes ago you told me you didn't notice anything to your foot until a half hour later.
>
> A: It didn't hurt, but I – I had difficulty walking, the shoes that I was wearing.
>
> Q: Why?
>
> A: I don't know.
>
> Q: You didn't have any difficulty walking when you went out to throw the paper or

PAGE 9 – DEFENDANT CITY OF SALEM'S MOTION FOR SUMMARY JUDGMENT

|   |   |                                                              |
|---|---|--------------------------------------------------------------|
|   |   | come back in, did you?                                       |
| A: | | No.                                                          |
| Q: | | So why did you have difficulty walking out?                  |
| A: | | I would assume because my foot was bothering me, but I didn't notice it. |
| Q: | | Does that make sense to you?                                 |
| A: | | Yeah.                                                        |
| Q: | | It does?                                                     |
| A: | | Mm-hm.                                                       |

(Gaddis Dec. Ex. 1 Bratcher Dep. 90:7-25). Although the length that plaintiff walked to Deputy Smith's patrol vehicle is a matter for debate, plaintiff's allegation rests on the premise that the law enforcement officers knew about the alleged injury to his foot. At deposition plaintiff testified that he did not communicate the injury to any of the officers because he "didn't feel it at the time." (Gaddis Dec. Ex. 1 Bratcher Dep. 121:12-21). Escorting an arrested individual to a patrol is not an unreasonable use of force; rather, it is an integral part of taking someone into custody.

  b. *Governmental Interest*

"[T]he *most important* single element of the three specified [*Graham*] factors [is] whether the suspect poses an immediate threat to the safety of the officers or others." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994) (emphasis added). When City law enforcement officers responded to plaintiff's residence, they believed that they were responding to a volatile and high-risk situation. (Donner Dec. ¶¶ 2-5; Galusha Dec. ¶¶ 2-5).  Their initial observations did little to lessen their concerns. (Donner Dec. ¶¶ 8-9; Galusha Dec. ¶¶ 8-9). Despite arriving to an uncertain and volatile situation, City law enforcement officers used little to no force on plaintiff. They simply assisted Deputy Smith in escorting plaintiff to Deputy Smith's patrol vehicle. Any unintentional, and insignificant use of force, that resulted from their assistance was absolutely reasonable under the circumstances. Plaintiff's Fourth Amendment excessive force claim against City defendants should be dismissed.

PAGE 10 – DEFENDANT CITY OF SALEM'S MOTION FOR SUMMARY JUDGMENT

**III.   City defendants are entitled to Qualified Immunity**

Even if the court found that the City defendants' use of force was questionable, the City law enforcement officers should still be entitled to Qualified Immunity. "Qualified immunity shields a government official from money damages unless (1) the official violated a statutory or constitutional right, and (2) that right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted). The Supreme Court "does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. at 741.

Plaintiff cannot point to any case that establishes that causing exercising control over an arrested individual's property prior to escorting them to a patrol car is unconstitutional. There is also a lack of case law to support plaintiff's assertion that escorting an arrested individual to a patrol or possibly scratching the arrestee with a fingernail while an officer does so is unconstitutional. Reasonable officers confronting the same situation would have believed their actions were lawful under the circumstances. Without question, City defendants are entitled to qualified immunity in this case and plaintiff's Fourth Amendment claims against them must be dismissed.

**IV.   STATE CLAIMS**

   **A.   Assault and Battery**

In plaintiff's first claim, he alleges "* * * Defendant City of Salem, by and through its employees DOES 1-2, acted in such a manner to cause harmful or offensive contact when confiscating plaintiff's property, throwing it across the room, and leaving injuries on plaintiff during

transport." (FAC ¶ 23). Plaintiff's second claim alleges "* * * Defendant City of Salem, by and through [its] employees, acted in such a manner that [the City] intended to cause harmful or offensive contact with plaintiff and followed through this intention by * * * caus[ing] injury to plaintiff's left bicep." (FAC ¶ 27). "[A]n assault is an intentional attempt by force to do violence to the person of another, and a battery is the actual application to such person of the attempted force and violence." *Cook v. Kinzua Pine Mills Co.*, 207 Or. 34, 47, 293 P.2d 717, 723 (1956). Both Oregon torts require *intent* on the part of the involved officer. It is undisputed that the City law enforcement officer did not intend to inflict any sort of injury on plaintiff, either in taking control of plaintiff's property pursuant to arrest or allegedly leaving fingernail scratches on his arm. (Plaintiff testified that the City law enforcement officer did not purposely harm him.) (Gaddis Dec. Ex. 1 Bratcher Dep. 133:17-25); Donner Dec. ¶ 12; Galusha Dec. ¶11).

Further, law enforcement officers performing their duty acting with apparent authority are entitled to good faith immunity under ORS 30.265(6)(f). There are no facts to support any question of malice by the City law enforcement officers.

## CONCLUSION

City defendants respectfully request the Court grant defendants' Motion for Summary Judgment in its entirety and dismiss this case against the City defendants.

DATED this 28th day of January, 2022.

 *s/ Jennifer M. Gaddis*
Jennifer M. Gaddis, OSB No.071194
jgaddis@cityofsalem.net
Attorneys for City Defendants