Kenneth S. Montoya
*kenny@montoyahisellaw.com*
Law Offices of Montoya, Hisel and Associates
901 Capitol St. NE
Salem, OR 97301
  Telephone: (503) 480-7252
  Fax: (503) 779-2716
    Attorney for Defendant Polk County
    and Deputy Michael H. Smith

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KEVIN BRATCHER,<br><br>             Plaintiff,<br><br>  v.<br><br>POLK COUNTY; CITY OF SALEM;<br>DEPUTY MICHAEL H. SMITH, in his<br>individual capacity; and DOES 1-4, in their<br>individual capacity,<br><br>             Defendants. | Case No. 3:20-cv-02056-SB<br><br>**COUNTY DEFENDANTS' MOTION<br>FOR SUMMARY JUDGMENT** |

## LR 7-1 CERTIFICATION

Undersigned counsel certifies that he conferred with plaintiff's counsel, Kevin Lafky, by

email on January 28, 2022. Mr. Lafky advised that plaintiff is unwilling to voluntarily dismiss the

claims asserted against defendants Polk County and Deputy Michael H. Smith. As a result, this

motion is necessary.

## MOTION

Defendants Polk County and Deputy Michael H. Smith ("Deputy Smith") (collectively

"County Defendants") move the Court under Fed. R. Civ. P. 56 for Summary Judgment against

Page 1 –   **COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

plaintiff on all of his claims on the grounds that County Defendants are entitled to judgment as a matter of law. In support of this Motion, County Defendants rely upon the pleadings on file and the following documents that accompany this Motion:

    (a)    The Declaration of Deputy Michael H. Smith:

    (b)    The Declaration of Sergeant Jason Ball;

    (c)    The Declaration of Kenneth S. Montoya; and

    (d)    The Memorandum of Law below.

## MEMORANDUM OF LAW

### INTRODUCTION

On September 6, 2019, Deputy Smith attempted to serve a civil summons on plaintiff's wife. Plaintiff refused to accept the service and, plaintiff committed two arrestable crimes in Deputy Smith's presence and then fled into his house. Deputy Smith lawfully pursued plaintiff into his house and used minimal and reasonable force to effect plaintiff's arrest.

Plaintiff alleges five claims in his First Amended Complaint (FAC) against County Defendants. (ECF 19). These claims include a § 1983 Fourth Amendment claim for unreasonable search and seizure, and state claims for Assault, Battery, Negligence, and Intentional Infliction of Emotional Distress (IIED). Summary judgment should be granted on all of plaintiff's claims. At a minimum, Deputy Smith is entitled to qualified immunity on plaintiff's Fourth Amendment claim because at the time of plaintiff's arrest there was no controlling precedent to put Deputy Smith on notice that his actions violated the Constitution.

### UNDISPUTED RELEVANT FACTS

On September 6, 2019, at approximately 10:02 a.m., Polk County Sheriff's Deputy Michael Smith went to plaintiff's residence to attempt to serve a Notice of Small Claim to Keely Bratcher,

plaintiff's wife. (Smith Decl. ¶ 2). At the time, Deputy Smith knew that a Polk County Sheriff's Office volunteer, John Brown, had previously attempted to serve Ms. Bratcher on August 29, 2019. *Id*. Mr. Brown noted that Ms. Bratcher refused to accept the service and Mr. Brown did not know that she was not allowed to refuse service, so he returned the service documents to the Sheriff's Office. *Id*.

When Deputy Smith arrived at the Bratcher's residence, plaintiff answered the door and told Deputy Smith that his wife was out of town on vacation. (Smith Decl. ¶ 3). Deputy Smith later learned that plaintiff was untruthful as his wife was not out of town nor on vacation. *Id*.; (Montoya Decl. ¶ 2 pp. 36 – 37). Plaintiff was uncooperative and argumentative with Deputy Smith and insisted that the underlying debt was paid. (Smith Decl. ¶ 3). Deputy Smith explained that his job was to serve the paperwork, not to adjudicate the underlying Small Claims Court lawsuit, *Ray Klein Inc. v. Keely Bratcher,* Polk County Circuit Court Case No. 19SC28316. *Id*. Plaintiff continued arguing with Deputy Smith and refused to accept service on behalf of his wife. *Id*. Deputy Smith suspected plaintiff was lying about his wife being on vacation and tried to effect service by telling him that another deputy may attempt service at 3:00 a.m. to contact her at a time she was home. *Id*. Deputy Smith mistakenly believed plaintiff could refuse service, so he left the home with the paperwork and intended to serve Ms. Bratcher personally at a later time. *Id*.

After Deputy Smith left, plaintiff called the Polk County Sheriff's Office to complain that Deputy Smith threatened to return at 3:00 a.m. (Montoya Decl. ¶ 2, p. 35). Plaintiff spoke with Sergeant Ball regarding Deputy Smith's attempt to serve him with civil service for his wife. (Ball Decl. ¶ 2). Plaintiff told Sergeant Ball that Deputy Smith was rude and unprofessional. *Id*. Plaintiff also told Sergeant Ball that his wife was out of state, which Sergeant Ball later learned was untrue as she was at work. *Id*. Sergeant Ball took plaintiff's complaint and asked plaintiff if he wanted to

Page 3 –   **COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

file a formal complaint, but plaintiff declined. (Montoya Decl. ¶ 2, pp. 35-36). Sergeant Ball indicated that he would speak with Deputy Smith about the encounter. *Id* at p. 41. After speaking with plaintiff, Sergeant Ball contacted Polk County Civil Deputy Jay M. Schmoyer and asked if the Sheriff's Office had received a cancellation for the civil paperwork that Deputy Smith attempted to serve plaintiff. (Ball Decl. ¶ 3). Deputy Schmoyer told Sergeant Ball that no cancellation had been received. *Id*. Deputy Schmoyer further advised Sergeant Ball that if they knew plaintiff lived at the residence, he could be sub-served. *Id*.

After speaking with Deputy Schmoyer, Sergeant Ball called Deputy Smith and told him about the complaint he had received from plaintiff. (Ball Decl. ¶ 4). Sergeant Ball also told Deputy Smith about his conversation with Deputy Schmoyer who advised that Deputy Smith could substitute service on plaintiff for the service on Ms. Bratcher. *Id*. Sergeant Ball also suggested Deputy Smith return to plaintiff's home and smooth over the previous incident and give plaintiff the service documents. *Id*.

Deputy Smith confirmed plaintiff's identity through DMV records and returned to plaintiff's home at approximately 11:07 a.m. (Smith Decl. ¶ 4). Plaintiff answered the door and stepped out to his front porch to speak with Deputy Smith. *Id*. Deputy Smith confirmed plaintiff was Kevin Bratcher and both Deputy Smith and plaintiff advised each other that they were recording the conversation. *Id*. Deputy Smith told plaintiff that he had spoken with Sergeant Ball and that no one would be serving papers at 3:00 a.m. *Id*. Also, he explained that plaintiff could not refuse service documents and attempted to hand plaintiff the service documents but, plaintiff turned around and went inside his house. *Id*. As plaintiff was closing the door, Deputy Smith tossed the papers into the house and told him, "you've been served," and began walking back to his police vehicle. *Id*.

Page 4 –  **COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

After Deputy Smith threw the service papers into his home, plaintiff reacted by throwing the papers out his front door, onto his front porch, and shutting his door. (Montoya Decl. ¶ 2, p. 41). Within seconds of closing his door, plaintiff went outside, picked the papers up again and went towards his driveway. *Id*. Deputy Smith heard plaintiff yelling, told him he had already been served, and continued walking toward his police vehicle. (Smith Decl. ¶ 5). Plaintiff followed Deputy Smith to the end of his driveway, threw the papers from his driveway toward the road, and walked back toward his house. (Montoya Decl. ¶ 2, p. 41). Deputy Smith observed that the paperwork landed in the street and believed he had probable cause that plaintiff violated ORS 164.805 (Offensive Littering). (Smith Decl. ¶ 5).

As Deputy Smith saw plaintiff commit a crime, he loudly and clearly ordered plaintiff to stop. (Smith Decl. ¶ 6). Plaintiff ignored Deputy Smith's multiple commands to stop and fled to his front door, made eye contact with Deputy Smith, and quickly shut the door before Deputy Smith could reach him. *Id*. Deputy Smith believed plaintiff's door was slightly ajar and would swing open with minimal damage to the door. However, when Deputy Smith kicked the door, the door itself did not open but the door's insert dislodged and landed on the floor inside the house. *Id*. Deputy Smith entered the home, took hold of plaintiff's left arm and told plaintiff he was under arrest. *Id.* Deputy Smith attempted to put plaintiff's arm behind his back to handcuff him, but plaintiff used his physical strength to resist the Deputy's efforts. *Id*. Deputy Smith used his radio to call for emergency backup. *Id*. Deputy Smith ordered plaintiff to get on the ground and put his hands behind his back, but plaintiff refused to comply and argued with Deputy Smith and demanded that the Deputy let him go. *Id*. Deputy Smith warned plaintiff several times that he would use his Taser on him but, realized that although plaintiff was resisting attempts to put him

in handcuffs, he was not trying to assault the Deputy nor trying to flee. *Id*. As a result, Deputy Smith decided to change his tactics while waiting for backup officers to arrive.

Before backup officers arrived, plaintiff demanded to sit down, so Deputy Smith escorted him to a nearby staircase to sit. (Smith Decl. ¶ 7). Plaintiff told Deputy Smith that he could not be handcuffed behind his back due to a medical condition, so Deputy Smith placed the handcuffs in front of his body. *Id*. Plaintiff told Deputy Smith that he has a medical "stimulator" in his back and needed the remote control to stop the device from shocking him. (Montoya Decl. ¶ 2, p. 42). Plaintiff asked Deputy Smith if he could get the remote to turn the stimulator off and his cell phone to call his wife and Deputy Smith allowed him to gather his items. *Id*. Plaintiff's dogs were barking, and plaintiff was concerned about them escaping, so Deputy Smith assisted plaintiff in securing his dogs. (Smith Decl. ¶ 7). Plaintiff then sat in a chair in the front room. *Id*. A few minutes later, backup officers arrived and escorted plaintiff to Deputy Smith's patrol vehicle. *Id*. Deputy Smith issued plaintiff a citation for Offensive Littering and Interfering with a Peace Officer. *Id*. Deputy Smith took photographs of the service documents that he served on plaintiff, lying in the street in front of his driveway. (Smith Decl. ¶ 8). Plaintiff was released approximately ten minutes after the arrest was initiated. (Montoya Decl. ¶ 2, p. 43).

A.      **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed R Civ P 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The non-moving party must come forward with

"specific facts showing there is a genuine issue for trial." Fed R Civ P 56(e); *Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986).

"A Summary Judgment Motion cannot be defeated by relying solely upon conclusory
allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). It is
only the material facts that come into play. A fact is "material" when it is relevant to an element
of a claim or when its existence might affect the outcome of the suit. *TW Elec. Service Inc. v.
Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the non-moving party's
facts, together with undisputed background or contextual facts, do not show the non-moving party
to be justified to a jury verdict in its favor, summary judgment is appropriate. *Id.* at 631. Summary
judgment is mandated where the facts and the law will reasonably support only one conclusion.
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250-251, 106 S. Ct. 2505 (1986). One of the
principal purposes of a summary judgment procedure is to isolate the disposal of claims that are
not factually supported, and the rule is to be interpreted to accomplish this purpose. *Celotex,* 477
U.S. at 323-24. The "mere existence of a scintilla of evidence in support of plaintiff's positions
[is] insufficient." *Anderson,* 477 U.S. at 252. Therefore, where "the record taken as a whole could
not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."
*Matsushita,* 475 U.S. at 587.

B.    **PLAINTIFF'S CLAIMS**

   1. **Federal**

      (A)   **§ 1983 Fourth Amendment**

Plaintiff claims Deputy Smith deprived him "of his right to be free from unreasonable
search and/or seizure when [he] kicked open plaintiff's door, tackled him, and threatened to tase
him repeatedly." (ECF 19, ¶ 43). The undisputed evidence shows Deputy Smith's warrantless entry

was justified under the hot pursuit doctrine, Deputy Smith did not tackle plaintiff, and the minimal force used was reasonable under the circumstances.

a.    *Deputy Smith's Warrantless Entry Justified by the Hot Pursuit Doctrine*

Plaintiff claims Deputy Smith's warrantless entry into his home violated the Fourth Amendment. Warrantless entry into a home is justified when a police officer has <u>probable cause</u> to arrest a suspect and <u>exigent circumstances</u> are present. *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (emphasis added). There is no dispute Deputy Smith witnessed plaintiff commit a crime and had probable cause to arrest him for violation of ORS 164.805 (Offensive Littering). As noted above, Deputy Smith took photographs that show the location where plaintiff threw the service documents, and these photographs clearly show that location as the street in front of plaintiff's driveway. (Smith Decl. ¶ 8, pp. 1 – 2).

The Supreme Court has long ago established that the "hot pursuit doctrine" satisfies the exigent circumstances exception. *Steagald v. United States*, 451 U.S. 204, 218, 101 S. Ct. 1642, 1651 (1981) ("We have long recognized that such 'hot pursuit' cases fall within the exigent-circumstances exception to the warrant requirement…."). "Hot pursuit" is recognized when there is an "immediate or continuous pursuit of [a suspect] from the scene of a crime." *Welsh v. Wisconsin*, 466 U.S. 740, 741, 104 S. Ct. 2091, 2093 (1984) (A warrantless entry in hot pursuit is limited to crimes (felonies or misdemeanors)). The length of a pursuit is irrelevant to justifying a warrantless entry. *United States v. Santana*, 427 U.S. 38, 43, 96 S. Ct. 2406, 2410 (1976) ("The fact that the pursuit here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into [suspect's] house.").

Here, Deputy Smith was chasing plaintiff to arrest him for a crime the deputy witnessed. This is the textbook example of a suspect fleeing arrest from a law enforcement official chasing

him. As Deputy Smith was in hot pursuit of plaintiff, the warrantless entry into plaintiff's home is justified for that reason alone, regardless of the severity of the underlying offenses. Video evidence produced by plaintiff shows that plaintiff fled from Deputy Smith who was literally running after plaintiff. (Montoya Decl. ¶ 3, at 0:00:36). And plaintiff's attempt to run from Deputy Smith provided the deputy with probable cause to arrest plaintiff for ORS 162.247, Interference with Police Officer – Class A misdemeanor, in addition to ORS 164.805. Plaintiff cannot lawfully attempt to "thwart an otherwise proper arrest" by escaping into his house. *United States v. Santana*, 427 U.S. at 42.

The undisputed evidence shows Deputy Smith had probable cause to arrest plaintiff for two misdemeanor crimes and was justified under the hot pursuit doctrine to enter plaintiff's home to effect arrest. Accordingly, no Fourth Amendment violation occurred when Deputy Smith entered plaintiff's home.

b. *Use of Force Was Minimal, Not Excessive*

Plaintiff claims Deputy Smith used *excessive* force by tackling plaintiff to the ground and threatening to Tase him. (FAC, ¶ 43). An officer's use of excessive force to affect an arrest violates a person's Fourth Amendment right to be free from unreasonable searches and seizures. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Supreme Court held in *Graham* that claims of excessive force in the course of an arrest or investigatory stop "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard…." *Graham*, 490 U.S. at 386. When no genuine issues of material fact exist, and "the relevant set of facts has been determined, the reasonableness of the use of force is a pure question of law." *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)) (internal quotation marks omitted). To assess the objective reasonableness of a particular use of force, the court balances:

(1) the severity of the intrusion (type and amount of force inflicted), with (2) the government's interest in the use of force. *Lowry*, 858 F.3d at 1256 (internal quotation marks and citation omitted). Courts also consider, under the totality of the circumstances, the "quantum of force used to arrest the plaintiff, [], the availability of alternative methods of capturing or detaining the suspect, [], and the plaintiff's mental and emotional state []." *Luchtel v. Hagemann,* 623 F.3d 975, 980 (9th Cir. 2010) (internal citations omitted).

1. *Severity of Intrusion – Minimal Force*

Here, Deputy Smith used minimal and objectively reasonable force to restrain and arrest plaintiff and at no time "tackled [plaintiff] to the ground." (FAC, ¶¶ 13, 14, 23, 24, 28, 32, 36, 37, 43). Rather, as plaintiff candidly admitted in his sworn deposition, Deputy Smith "put his hands on [plaintiff], [and] pushed [him] to the wall" and did not take plaintiff to the ground. (Montoya Decl. ¶ 2, pp. 86-87, 106) ("Q. And he didn't take you to the ground, did he? A. Not that I recall."). Deputy Smith did not punch, kick, strike, or hit plaintiff in any fashion. (Montoya Decl. ¶ 2, pp. 58-59).

Plaintiff also alleges Deputy Smith used excessive force by *threatening* to Tase him. (FAC, ¶ 43). However, the only evidence in support of this claim is that Deputy Smith warned plaintiff several times that if he did not comply, he would be Tased. *Id*. And, it is important to note that while plaintiff claims that Deputy Smith repeatedly threatened to Tase him, he admits that Deputy Smith never pulled his Taser out of his holster. (Montoya Decl. ¶ 2, p. 56) ("Q. Did [Deputy Smith] ever pull the Taser out of the holster? A. No, he did not, sir."). Deputy Smith's *warnings* that he would use a Taser if plaintiff did not submit to arrest in these circumstances does not constitute *any* level of force, and Deputy Smith's physical use of force was minimal at most.

2.    *Minimal Governmental Interest Was Commensurate with Minimal Force*

Under *Graham*, the government's interest in using force is determined by examining "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Although the facts on summary judgment must be taken in the light most favorable to plaintiff, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene…." *Id.* at 396. Ultimately, the court considers which factors to consider based on a totality of circumstances in each case. *Bryan v. MacPherson,* 630 F.3d 805, 826 (9th Cir. 2010).

It is undisputed that the severity of the underlying crimes here was minimal – a Class A misdemeanor and a Class C misdemeanor. Furthermore, there is no indication that plaintiff posed an immediate threat to the safety of Deputy Smith or others. However, based on the totality of the circumstances known to Deputy Smith, plaintiff was actively resisting arrest after attempting to evade arrest by flight. On these facts, it was objectively reasonable for Deputy Smith to take hold of plaintiff's left arm and attempt to bring it behind plaintiff's back to handcuff him. It was also reasonable for Deputy Smith to detain plaintiff against a wall after plaintiff physically resisted being handcuffed. The totality of the circumstances here justified the minimal force used to affect plaintiff's arrest.

### (B)    Qualified Immunity

At a minimum, even if the Court were to find an issue of fact as to Deputy Smith's actions in taking plaintiff into custody, Deputy Smith is still entitled to qualified immunity. Under the doctrine of qualified immunity, police officers "performing discretionary functions [are protected] from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). In determining whether qualified immunity applies, the Court considers whether the plaintiff alleged facts sufficient to establish the violation of a constitutional right and whether the constitutional right was <u>clearly established</u> at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001) (emphasis added). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions, and when properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074 (2011).

        a. *Qualified Immunity for Warrantless Entry*

Before the Supreme Court's recent ruling in *Lange v. California* (<u>2021</u>), it was well-established that:

> hot pursuit is not merely a setting in which other exigent circumstances justifying warrantless entry might emerge. It is itself an exigent circumstance. <u>And we have never held that whether an officer may enter a home to complete an arrest turns on what the fleeing individual was suspected of doing before he took off, let alone whether that offense would later be charged as a misdemeanor or felony</u>. It is the flight, not the underlying offense, that has always been understood to justify the general rule: "Police officers may enter premises without a warrant when they are in hot pursuit of a fleeing suspect." *Kentucky v. King*, 563 U.S. 452, 460, 131 S. Ct. 1849, 179 L.Ed.2d 865 (2011).

*Lange v. California*, 141 S. Ct. 2011, 2028 (2021) (Roberts, J., concurring) (emphasis added). However, despite its clear guidance in *King*, the Supreme Court departed from this general rule in *Lange* – <u>after</u> the events giving rise to this lawsuit occurred. *Lange v. California*, 141 S. Ct. at 2021 (Since *Lange*, "[i]n misdemeanor cases, flight does not always supply the exigency that this Court has demanded for a warrantless home entry.").

In *Stanton v. Sims*, 571 U.S. 3 (2013), the Supreme Court recognized that, "federal and state courts nationwide are sharply divided on the question whether an officer with probable cause to arrest a suspect for a misdemeanor may enter a home without a warrant while in hot pursuit of that suspect." 571 U.S. at 6 ("the law regarding warrantless entry in hot pursuit of a fleeing misdemeanant is not clearly established" one way or the other). Relying partially on *Stanton v. Sims*, the Oregon Court of Appeals more recently determined that under the Fourth Amendment, "the police may lawfully enter a defendant's home without a warrant when there is probable cause to arrest the defendant for a crime and exigent circumstances, such as hot pursuit of the defendant, are present." *State v. Wright*, 280 Or. App. 259, 264 (2016) ("when an officer has probable cause to believe that a suspect has committed a crime and the officer is in hot pursuit of the suspect, the 'suspect may not defeat an arrest [that] has been set in motion in a public place * * * by the expedient of escaping to a private place.'") (quoting *Santana*, 427 U.S. at 43). Accordingly, at the time of events giving rise to this lawsuit, it was <u>not</u> clearly established under state or federal law that an officer violates the Fourth Amendment by executing a warrantless entry in hot pursuit of a suspect who an officer has probable cause to arrest for two misdemeanor crimes. As such, even if Deputy Smith was mistaken about the legal parameters of the hot pursuit doctrine, he is entitled to qualified immunity because the parameters were not clearly established in 2019 and continue to evolve.

## b. *Qualified Immunity for Minimal Force*

In order to defeat Deputy Smith's entitlement to qualified immunity "plaintiff bears the burden of proving not only that both elements of [his] claim are resolved in [his] favor, but also that both elements are 'clearly established' in [his] favor." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998) (citing *Davis v. Scherer*, 468 U.S. 183, 197,

104 S. Ct. 3012 (1984)); *See also Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808 (2009).

"The qualified immunity standard gives ample room for mistaken judgments by protecting all but

the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224,

229, 112 S. Ct. 534 (1991) (internal quotations omitted). The Supreme Court continues to stress

that <u>specificity is required</u> in examining the conduct that allegedly infringed a "clearly established"

constitutional right. *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 502-504 (2019) (emphasis

added). <u>Qualified immunity cannot be circumvented with general allegations</u>. *Id.* (emphasis

added).

Deputy Smith had probable cause to arrest plaintiff and used minimal force to effect the

arrest. Deputy Smith did not punch, hit, strike, or kick plaintiff, nor did he use lethal or non-lethal

force against plaintiff. Plaintiff cannot rely on general allegations to defeat Deputy Smith's

immunity here – he bears the burden of showing, with "specificity," that Deputy Smith's use of

minimal force clearly violated an established constitutional right. In other words, plaintiff must

point the Court to a case with similar facts to those here, that placed the "constitutional question

beyond debate." *al-Kidd*, 563 U.S. at 741. As plaintiff will be unable to direct the Court to any

such case, Deputy Smith is entitled to qualified immunity.

### 2. State Law Claims

#### (A)   Assault

Plaintiff claims Defendant Polk County, through Deputy Smith, assaulted plaintiff by using

force to enter his property and tackling him to the ground. (ECF 19, ¶¶ 22-25). In civil law,

"[a]ssault is defined as 'an intentional attempt to do violence to the person of another coupled with

present ability to carry the intention into effect.'" *Grobstein v. Port of Portland*, No. 3:18-CV-

01916-YY, 2021 WL 1300115, at *11 (D. Or. Feb. 16, 2021), *report and recommendation*

*adopted*, No. 3:18-CV-01916-YY, 2021 WL 1299195 (D. Or. Apr. 7, 2021) (quoting *Bollaert v. Witter*, 101 Or. App. 654, 658 (1990) (citation omitted)). "A police officer has a complete defense to civil liability for assault or battery if the officer used force as authorized by statute." *Wagoner v. City of Portland*, No. 3:14-cv-2063-AC, 2017 WL 2369399, at \*10 (citing *Gigler v. City of Klamath Falls*, 21 Or. App. 753, 763 (1975)). ORS 133.310 provides in relevant part, "A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed … [a] misdemeanor." Moreover, "[A] police officer is justified under Oregon law in using physical force when he or she believes it is reasonably necessary to make an arrest … and a police officer is presumed to be acting in good faith in determining the amount of force necessary to make the arrest." *Ballard v. City of Albany*, 221 Or. App. 630, 641, 191 P.3d 679, 686 (2008) (citations omitted).

As shown above, plaintiff candidly admits that Deputy Smith did *not* tackle plaintiff to the ground. Deputy Smith was justified for the warrantless entry under the hot pursuit doctrine as he had probable cause to arrest plaintiff for violations of ORS 164.805 and ORS 162.247. And plaintiff cannot point to anything more than *de minimis* force used by Deputy Smith to effect his arrest.

Moreover, there is no evidence that Deputy Smith *intended* to cause injury to plaintiff. To the contrary, plaintiff admits Deputy Smith stopped warning plaintiff that he would Tase him after realizing plaintiff has PTSD and a disability. (Montoya Decl. ¶ 2, pp. 143 – 144) ("Q. Did [Deputy Smith] continue to threaten to Tase you after you had mentioned you have PTSD? A. No. Q. Did [Deputy Smith] threaten to Tase you after you had mentioned you were disabled? A. No."). *Id*. Additionally, after plaintiff told Deputy Smith that "he was being shocked the wrong way by [his] stimulator and [he] was a disabled veteran," Deputy Smith allowed plaintiff "to sit down on the

stairs and he placed the cuffs on [plaintiff] in the front." (Montoya Decl. ¶ 2, p. 42). Then, in

plaintiff's words, "I asked him if I could go get the remote for my stimulator to turn it off, and my

cell phone so I can contact my wife. And he let me go grab both of those items." *Id*. Accordingly,

there is no indication Deputy Smith intended to harm plaintiff and this claim should be dismissed.

   **(B)**   **Battery**

   In civil law, battery requires "an actual intent not only to do an act but to cause personal

injury." *Cook v. Kinzua Pine Mills Co.*, 207 Or. 34, 58-59 (1956). Additionally, "Oregon law

cautions that the court should only infer ... subjective intent to cause harm or injury as a matter of

law when such subjective intent is the only reasonable inference that may be drawn from the

insured's conduct." *Gakk Inc. v. Acceptance Cas. Ins. Co.*, No. CV 09–6282–MO, 2010 WL

3259905, at *2 (D. Or. Aug. 16, 2010). *See also Redman v. Morehead*, No. 3:12–CV–11–AC,

2012 WL 1253108, at *3 (D. Or. Apr. 13, 2012) (same). ORS 133.310 provides in relevant part,

"A peace officer may arrest a person without a warrant if the officer has probable cause to believe

that the person has committed … [a] misdemeanor." Moreover, "[A] police officer is justified

under Oregon law in using physical force when he or she believes it is reasonably necessary to

make an arrest … and a police officer is presumed to be acting in good faith in determining the

amount of force necessary to make the arrest." *Ballard v. City of Albany*, 221 Or. App. 630, 641,

191 P.3d 679, 686 (2008) (citations omitted).

   County Defendants rely upon the same arguments raised above against plaintiff's claim of

Assault to establish that plaintiff is incapable of demonstrating any unlawful intent on the part of

Deputy Smith.   As there is no evidence that Deputy Smith *intended* to harm plaintiff, this claim

should be dismissed.

/ / /

**(C)**     **Negligence**

Plaintiff claims that "[b]y kicking in Plaintiff's door and tackling him to the ground … Deputy Smith ignored the conduct that any reasonable officer in his position would have taken." (FAC, ¶¶ 32, 33) (Deputy Smith should have known that "kicking in a suspect's door and tackling them to the ground for a nonviolent offense was not appropriate."). This claim is based on the same operative facts as plaintiff's § 1983 claim; therefore, Defendants are entitled to summary judgment on plaintiff's negligence claim. Furthermore, plaintiff contributed to his own alleged injuries by committing arrestable crimes in front of Deputy Smith, failing to submit to arrest and fleeing into his house.

"[A] state common-law claim of negligence may be maintained separately from a § 1983 claim <u>only when the negligence claim is based on facts that are different from the facts on which the § 1983 claims are based</u>." *Whitfield v. Tri–Metropolitan Transp. Dist.,* No. 06–1655–HA, 2009 WL 839484, at *11 (D. Or. Mar. 30, 2009) (emphasis added) (plaintiff's negligence claim was based on the same operative facts as his § 1983 claim so the court granted the defendant's motion for summary judgment as to the plaintiff's negligence claim). *See also Shilo v. City of Portland,* Civ. No. 04–130–AS, 2005 WL 3157563, at *1 (D. Or. Nov. 22, 2005) ("[A] plaintiff may allege negligence as a basis for recovery separate from § 1983 for acts arising in the Fourth Amendment search and seizure context. <u>The negligence claim, however, should not be founded on the same facts that give rise to the § 1983 claim</u>." (citation omitted) (emphasis added). Furthermore, assault and battery claims, which rely on intentional conduct, cannot form the basis for a negligence claim. *See Denton v. Arnstein,* 197 Or. 28, 45, 250 P.2d 407, 415 (1952).

Here, plaintiff's § 1983 claim alleges his injuries were caused by Deputy Smith's intentional conduct in kicking in his door, tackling him to the ground, and threatening to Tase him.

Page 17 –  **COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(FAC, ¶¶ 43-44). Plaintiff cannot bring a negligence claim for the same conduct alleged in his §

1983 claim; consequently, summary judgment should be granted in Deputy Smith's favor.

      **(D)**     **<u>Intentional Infliction of Emotional Distress</u>**

Plaintiff claims "Deputy Smith intended to inflict emotional distress on Plaintiff for

seemingly disobeying and not acquiescing to his service attempt." (FAC, ¶¶ 36-37) ("But for

Deputy Smith kicking open the door, tackling Plaintiff and threatening to tase him, there would

not be the emotional distress"). To satisfy a claim for intentional infliction of emotional distress,

plaintiff must prove *all* the following elements: "(1) the defendant intended to inflict severe

emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe

emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the

bounds of socially tolerable conduct." *Mullen v. Meredith Corp.*, 271 Or. App. 698 (2015). "The

bar for extraordinary departure from social acceptability is set very high. IIED is not available

where the actions complained of are 'merely rude, boorish, tyrannical, churlish, [or]

mean.'" *Upchurch v. Multnomah Univ.*, No. 3:19-CV-00850-AC, 2021 WL 6066283, at \*4 (D.

Or. Dec. 7, 2021), *report and recommendation adopted*, No. 3:19-CV-850-AC, 2021 WL 6064027

(D. Or. Dec. 22, 2021) (citation omitted). "Put another way, the conduct must be 'so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community.'" *Child v. City of Portland*, 547 F. Supp. 2d 1161, 1168 (D.

Or. 2008) (citation omitted).

Here, Deputy Smith's conduct, even viewed in the light most favorable to plaintiff, simply

does not constitute a transgression sufficiently extraordinary to meet the requirements for

plaintiff's IIED claim. As examined above, Deputy Smith was justified in the warrantless entry

under the hot pursuit doctrine, and he did *not* tackle plaintiff to the ground. Deputy Smith warned

plaintiff he would be Tased if he failed to comply with orders, but never even removed the Taser from its holster. And as soon as Deputy Smith realized plaintiff was disabled and no longer attempting to flee or assault him, Deputy Smith allowed plaintiff to sit on the stairway, be handcuffed in front, and retrieve his cell phone and medical devise. There is simply no evidence that Deputy Smith intended to inflict severe emotional distress on plaintiff. Accordingly, summary judgment should be granted on this claim.

## CONCLUSION

Plaintiff committed arrestable crimes in the presence of Deputy Smith and then fled the scene. Deputy Smith lawfully pursued plaintiff into his house and used minimal force to effect plaintiff's arrest. In 2019, under Supreme Court precedent, hot pursuits were considered exigent circumstances in and of themselves. Further, plaintiff admitted in his deposition that Deputy Smith did not "take him to the ground." Finally, even were the Court to find a factual dispute as to the reasonableness of Deputy Smith's use of force, he is still entitled to qualified immunity as there is no case that would have placed him on notice that he risked liability under the constitution for his actions. Based on the foregoing, County defendants respectfully request the Court grant their Motion for Summary Judgment in its entirety.

DATED this 28th day of January, 2022.

s/ Kenneth S. Montoya
Kenneth S. Montoya, OSB #064467
Attorney for Defendant Polk County and
Deputy Michael H. Smith

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing COUNTY DEFENDANTS' MOTION FOR

SUMMARY JUDGMENT on:

> Kevin T. Lafky
> Lafky & Lafky
> 429 Court Street NE
> Salem, OR 97301
>     Attorney for Plaintiff
>
> Jennifer M. Gaddis
> City of Salem Legal Department
> 555 Liberty St. SE, Room 205
> Salem, OR 97301
>     Attorney for City of Salem

by the following indicated method or methods:

**X**          by **electronic means through the Court's Case Management/Electronic Case File system** on the date set forth below;

               by **emailing** a copy thereof to each attorney at each attorney's last-known email address on the date set forth below;

               by **mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to plaintiff's last-known address listed above and depositing it in the U.S. mail at Salem, Oregon on the date set forth below.

DATED this 28th day of January, 2022.

                                        s/Kenneth S. Montoya
                                        Kenneth S. Montoya, OSB #064467
                                        Attorney for Defendant Polk County and
                                        Deputy Michael H. Smith

CERTIFICATE OF SERVICE