Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 1

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KEVIN BRATCHER,

       Plaintiff,

  v.                       Case No. 3:20-cv-02056-SB

POLK COUNTY; CITY OF SALEM;
DEPUTY MICHAEL H. SMITH, in
his individual capacity; and
DOES 1-4 in their individual
capacity,

       Defendants.

DEPOSITION OF KEVIN BRATCHER

Taken in Behalf of the Defendants

Thursday, September 30, 2021

Reported by:

D. Iwalani Carr, RPR, CSR

Carr Court Reporting
503-227-2277

MONTOYA DECLARATION EXHIBIT 1
Page 1 of 17

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 2

1      BE IT REMEMBERED THAT, pursuant to Federal
2  Rules of Civil Procedure, the deposition of KEVIN
3  BRATCHER was taken before D. Iwalani Carr, RPR, CSR, a
4  professional shorthand reporter certified by the State
5  of Oregon, that pursuant to ORS 44.320 said reporter is
6  empowered to administer oaths to witnesses, that the
7  above-named witness was placed under oath on Thursday,
8  September 30, 2021, commencing at the hour of 9:18 a.m.,
9  in the conference room of the Law Offices of Lafky &
10 Lafky, in the City of Salem, County of Marion, State of
11 Oregon.
12                         --o0o--
13
14                       APPEARANCES:
15
16 For the Plaintiff:
        Lafky & Lafky
17      By:  Marcus I. Vejar
        429 Court Street NE
18      Salem, OR 97301
19 For the County Defendants:
        Law Offices of Montoya Hisel and Associates
20      By:  Kenneth S. Montoya
        901 Capitol Street NE
21      Salem, OR 97301
22 For the City Defendants:
        City of Salem Legal Department
23      By:  Jennifer Gaddis
        555 Liberty St. SE, Room 205
24      Salem, OR 97301
25

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 35

1  before they come out to a house. It's not their job to
2  verify anything. And I -- he proceeded to still ask
3  where my wife was, and I told him that she was gone and
4  she wasn't going to be home for a while.
5          And I didn't know at the time I couldn't be       09:50
6  handed the papers, and Deputy Smith apparently didn't
7  know that I could be handed the papers at that time.
8  But he said that he would come back at 3:00 a.m., if
9  needed, to serve the papers.
10         And then he left, and I proceeded to call the     09:51
11 court -- or the sheriff's department to ask for the desk
12 sergeant to let them know how Deputy Smith reacted and
13 how he said he would come back at 3:00 a.m. And the
14 desk sergeant said they would not come back at
15 3:00 a.m.; that they only come in business hours.        09:51
16         And I told him that what they were there for
17 was already taken care of; that I tried to show Deputy
18 Smith the receipt that it was taken care of and the
19 paperwork from the company.
20         And Sergeant Ball, I believe was his name,       09:51
21 asked if I wanted to file formal complaints about how
22 Deputy Smith was acting or if I wanted it to be buddy
23 talk. And I told him --
24     Q.  Buddy talk?
25     A.  A one-on-one talk. That's a term we used in     09:52

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 36

1   the military when you have one-on-one talk with somebody
2   about something that they did. And I told him, because
3   I was military prior, that I would like him to have a
4   buddy talk with him.
5      Q.  Did the sergeant understand the term?  09:52
6      A.  Yes, sir.
7      Q.  We used to call it ass chewing from the first
8   sergeant in the Marine Corps.
9      A.  Yes, sir.
10     Q.  They're a little more crass in the Marine  09:52
11  Corps.
12        When he first presented with you -- that he
13  had documents, did you know what they were?
14     A.  I knew what it was because I asked him what
15  they were for.  09:52
16     Q.  Okay. And you told him they'd already been
17  dealt with and you offered to show him a receipt.
18     A.  Yes, sir.
19     Q.  Did you tell Deputy Smith your wife wasn't
20  there but was on vacation?  09:52
21     A.  Yes, sir.
22     Q.  Was she on vacation?
23     A.  No, sir.
24     Q.  Why did you tell him that?
25     A.  Because I was tired of them coming out to my  09:52

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 37

1  house. They had came a couple weeks before to it for
2  the exact same thing when she was on vacation.
3     Q.  When was that?
4     A.  In August.
5     Q.  Do you remember the name of that deputy?    09:53
6     A.  I do not know that one, sir.
7     Q.  Can you describe him?
8     A.  An older gentleman.
9     Q.  Caucasian?
10    A.  Yes, sir.                                   09:53
11    Q.  John Brown sound familiar?
12    A.  I don't -- he didn't give me his name, sir.
13    Q.  Didn't give you a business card?
14    A.  No, sir.
15    Q.  How tall was he?                            09:53
16    A.  I do not know that, sir.
17    Q.  Taller than you?
18    A.  Maybe just a little bit shorter.
19    Q.  And how tall are you, sir?
20    A.  6' 3".                                      09:53
21    Q.  So probably about six-foot?
22    A.  Maybe, yes, sir.
23    Q.  I'm not holding you accountable, I'm just
24  trying to get an idea who this person was.
25        Was he lean and mean or a full-sized fellow 09:53

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 41

1   A.  I believe it was close to 1100 or just a
2   little bit after 1100.
3   Q.  Had Sergeant Ball, when you spoke with him,
4   indicated that he was going to talk to Deputy Smith?
5   A.  Yes, sir.                                      09:57
6   Q.  When Deputy Smith arrived at your home, did he
7   again ring the bell?
8   A.  Yes, sir.
9   Q.  And you contacted him?
10  A.  I opened the door, sir.                        09:57
11  Q.  What did he say to you then?
12  A.  He said that he was here to serve the papers.
13  Called me by my name.  He knew my name.
14      And I said -- I said to him that they're null
15  and void paperwork.  I tried showing him the receipt.  09:58
16  And I went to walk back in the house and he threw them
17  at me.
18      After he had walked away, I threw them outside
19  the door, because he had threw them in the door, and
20  then I proceeded to go back out and pick them up again.  09:58
21  And I went out on my driveway and threw them up in the
22  air and started walking back to my house, tripped over
23  the crack in the stoop, and went in the house, shut the
24  door.
25      And moments later he kicked my door open and   09:58

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 42

1  busted it open, proceeded to grab me, threw me against
2  the wall. I told him that he was hurting me and I was
3  being shocked the wrong way by my stimulator and I was a
4  disabled veteran. And he threatened to Tase me, I
5  think, five or six times, because he had me pinned up          09:59
6  against the wall.
7           After he finally, I guess, calmed down, I
8  would say, and was listening to me that he was hurting
9  me by my stimulator shocking me, he let me sit down on
10 the stairs and he placed the cuffs on me in the front.         09:59
11          I asked him if I could go get the remote for
12 my stimulator to turn it off, and my cell phone so I can
13 contact my wife. And he let me go grab both of those
14 items. And he let me put the dogs away, because they
15 were out since the door was busted open and sitting in         09:59
16 pieces in the front.
17          I told him I wanted to talk to his supervisor,
18 and he said his supervisor was already on his way.
19          Moments later two Salem Police Department
20 officers arrived, began questioning Deputy Smith why he        10:00
21 cuffed me in the front and why I had my cell phone. One
22 of the -- or officers grabbed my cell phone and my
23 charger and threw them across the room. I would say
24 they didn't listen to Deputy Smith about why I was
25 cuffed in the front.                                           10:00

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 43

1   Then the two Salem police officers and Deputy
2   Smith proceeded to take me to Deputy Smith's police car.
3   And one of the officers had ahold of my arm and left
4   marks in my arm, forcibly taking me to the car, which I
5   was walking on my own accord; I didn't need somebody to    10:00
6   force me to go anywhere.
7         Sergeant Ball arrived moments later after
8   being placed in the car and asked who -- what happened
9   with the incident, and I recapped everything with him
10  that happened. They uncuffed me, and Deputy Smith gave    10:01
11  me the citation, arrest citation to go to the court.
12     Q.   Had your wife arrived by the time you were
13  uncuffed?
14     A.   She arrived 15, 20 minutes later.
15     Q.   How long from the time that Deputy Smith          10:01
16  knocked on your door the second time until you were
17  released from custody?
18     A.   Ten minutes.
19     Q.   So I neglected to ask you, when you were
20  speaking with Sergeant Ball on the telephone before      10:02
21  Deputy Smith arrived, you related that Deputy Smith said
22  they would come to your home at 3:00 a.m. to serve the
23  documents.
24     A.   Yes, sir.
25     Q.   And you told him you tried to show Deputy        10:02

Carr Court Reporting
503-227-2277

1  was going to Tase me.  I only remember him saying he was
2  going to Tase me.  I don't remember anything else.
3     Q.   So he could have been giving you commands to
4  put your hands behind your back and you don't recall.
5     A.   I do not recall, sir.                              10:16
6     Q.   Is that related to your TMI or --
7     A.   TBI.
8     Q.   -- TBI or the stress of the event that day?
9     A.   I would say probably with what was happening
10 in the incident, affecting my PTSD.                        10:16
11    Q.   You indicated the manner in which Deputy Smith
12 had your arms, and you showed me that you had them
13 together.  Am I correct?
14    A.   He had -- he had them in front of my arm --
15 body like this.                                            10:16
16    Q.   And did he have one of your arms in each of
17 his hands?
18    A.   Yes, sir.
19    Q.   So he had both hands on you.
20    A.   Yes, sir.                                          10:16
21    Q.   And he was threatening to Tase you?
22    A.   Yes, sir.
23    Q.   Did he ever pull the Taser out of the holster?
24    A.   No, he did not, sir.
25    Q.   Did he ever indicate that he was going to pull    10:16

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 58

1  holster?
2      A.  He said he was going to Tase me.  That's all I
3  remember.
4          MR. MONTOYA:  It's like the fifth time
5  I've asked the question.  I have not gotten an answer,   10:17
6  and he did answer.  So if you want to take him outside
7  to get him to tell me what he recalls, that's -- if he
8  doesn't recall, that's fine, but he has to answer.
9          THE WITNESS:  I do not recall anything
10 other, sir, than him saying he was going to Tase me.    10:17
11         Now, can we step out?  Because I'm
12 getting aggravated.
13         MR. MONTOYA:  Sure.
14         MR. VEJAR:  Okay.  Let's take a moment.
15         (Off the record, 10:17 to 10:28 a.m.)         10:17
16 BY MR. MONTOYA:  (Continuing)
17     Q.  Okay.  Mr. Bratcher, are you in good shape,
18 ready to go now?
19     A.  Yes, sir.
20     Q.  When Deputy Smith had your hands locked in the  10:28
21 position you showed me, were you struggling to get away
22 from him?
23     A.  No, sir.
24     Q.  Was he trying to take you to the ground?
25     A.  I do not recall, sir.                          10:28

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 59

| | | | |
|---|---|---|---|
| 1 | Q. | You're a lot bigger than him, aren't you? | |
| 2 | A. | I think so. | |
| 3 | Q. | Was he shaking you about? | |
| 4 | A. | He was pushing me into the wall. | |
| 5 | Q. | Was he trying to direct you other than to the wall? | 10:28 |
| 7 | A. | I do not know, sir. | |
| 8 | Q. | You didn't feel yourself pulled in any direction about the wall? | |
| 10 | A. | Not -- I don't recall, sir. | 10:28 |
| 11 | Q. | Did he ever strike you? | |
| 12 | A. | Just when he threw me into the wall. It was... | |
| 14 | Q. | Punch? | |
| 15 | A. | No. | 10:28 |
| 16 | Q. | Smack? | |
| 17 | A. | No. | |
| 18 | Q. | Knee you? | |
| 19 | A. | No, sir. | |
| 20 | Q. | Kick you? | 10:28 |
| 21 | A. | No. He was kicking at my dogs, because they came over to see what was going on. | |
| 23 | Q. | But, kick you? | |
| 24 | A. | No, sir. | |
| 25 | Q. | Try to kick you? | 10:29 |

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 86

1   A.   When he pushed me into the wall.
2   Q.   That's a tackle?
3   A.   For his size, I would say that's a tackle to
4   push me into the wall.
5   Q.   So you're saying pushing you into the wall is                10:57
6   tackling you.
7   A.   He forcibly tackled me. He put his hands on
8   me, pushed me to the wall.
9   Q.   Okay. Have you ever seen American football,
10  sir?                                                              10:57
11  A.   Yes, sir.
12  Q.   And would you agree that when they tackle,
13  they wrap their arms and put somebody on the ground.
14  Right?
15  A.   Yeah.                                                        10:58
16  Q.   This was a push; correct?
17  A.   It was a forcible tackle, pushing me into the
18  wall.
19  Q.   Okay.
20       And earlier in that paragraph, it says you                   10:58
21  tossed them into the air.
22  A.   Yes, sir.
23  Q.   Earlier you indicated you threw them on the
24  driveway. So were you just throwing them up and they
25  landed?                                                           10:58

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 87

1    A.    I threw them up in the air.  I was behind my
2  car.
3    Q.    Okay.  And paragraph 14, we don't have to read
4  it, because you've already testified about him
5  threatening to use his Taser.  Earlier you said five or        10:58
6  six times.
7          Is that right?
8    A.    Yes, sir.
9    Q.    And I already asked you about that.
10         I will ask you to look at the last sentence of         10:59
11 paragraph 14 on page 4 at the very bottom.  It begins
12 with the word "additionally."
13         Do you see that, sir?
14   A.    Yes.
15   Q.    So please read along with me.                          10:59
16         "Additionally, plaintiff is a disabled veteran
17 with post-traumatic stress disorder, and Deputy Smith's
18 continual threats to use additional force after tackling
19 plaintiff to the ground were particularly damaging and
20 stressful to plaintiff."                                       10:59
21         Did I read that accurately?
22   A.    Yes.
23   Q.    And he didn't take you to the ground, did he?
24   A.    Not that I recall.
25   Q.    Tell me how his threats were particularly --           10:59

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 106

1  A.  Well, he shouldn't have used -- his use of
2  force was beyond the scale of use of force.
3  Q.  Do you have use-of-force training?
4  A.  Yes, I do.
5  Q.  Describe what force he should have used, if     11:27
6  any.
7  A.  Less than means that he did.  He shouldn't
8  have used a forcible entry.  The incident didn't re --
9  the incident didn't account for -- not account for.  I
10 don't know how to say it.  The incident should not have  11:27
11 happened at that level of force that he used for the
12 offense that he was trying to follow through on.
13 Q.  This again says "tackling him to the ground."
14     You weren't tackled to the ground; right?
15 A.  Not that I recall, sir.                            11:27
16 Q.  Is there anything you could turn to that would
17 refresh your recollection to allow you to recall whether
18 or not you were tackled to the ground?
19 A.  This was over two years ago, sir.
20 Q.  And do you have trouble remembering the           11:28
21 incident?
22 A.  No.  Just certain things are -- I don't
23 remember specifically.
24 Q.  You'd agree getting tackled to the ground
25 versus getting pushed up against the wall, those are    11:28

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 143

1  grabbing it from your hand, what they were?
2      A.  No.
3      Q.  So they would have no knowledge if that was
4  the stimulator for your spinal cord?
5      A.  No.                                              12:36
6      Q.  Did you tell them after it was tossed?
7      A.  Yes.
8      Q.  Do you remember how they would have responded
9  to that?
10             MS. GADDIS:  Object to the form.              12:36
11             THE WITNESS:  I do not.
12  BY MR. VEJAR: (Continuing)
13     Q.  You had mentioned the injuries from Salem PD
14  were on a potential pain scale from one to two.  Is that
15  accurate?                                               12:36
16     A.  Yes.
17     Q.  Were you in other pain at that time?
18     A.  I didn't notice any other pain.
19     Q.  So from any of the other -- any of the other
20  incident -- anything else that occurred in the incident, 12:36
21  you didn't feel any other pain other than what was on
22  your arm?
23     A.  No.
24     Q.  Roughly how many times did Deputy Smith
25  threaten to Tase you?                                   12:36

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 144

1   A.   I would say it was five or six times.
2   Q.   Did he continue to threaten to Tase you after
3   you had mentioned you have PTSD?
4   A.   No.
5   Q.   Did he threaten to Tase you after you had                  12:37
6   mentioned you were disabled?
7   A.   No.
8   Q.   Did he threaten to Tase you after you had
9   mentioned anything about your physical condition?
10  A.   He did when I was telling him about my                     12:37
11  stimulator was shocking me, that's whenever he was
12  telling me he was going Tase me.
13  Q.   So you had mentioned during testimony that the
14  pain in your foot had not really started to become
15  noticeable until after roughly 30 minutes.                      12:37
16       Is that correct?
17  A.   Yes.
18  Q.   What about after that 30 minutes?  Can you
19  explain the extent of that pain?
20  A.   My foot was -- or my toe was swollen.                      12:37
21  Q.   And so using a similar pain scale as before
22  from one to ten, what would you say would be the amount
23  of --
24  A.   Five.
25  Q.   Five?                                                      12:37

Carr Court Reporting
503-227-2277

Kevin Bratcher - 9/30/2021
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 146

1                    CERTIFICATE
2
3
4        I, D. Iwalani Carr, a certified Shorthand
5   Reporter for Oregon, hereby certify that, pursuant to
6   Federal Rules of Civil Procedure, KEVIN BRATCHER
7   personally appeared before me at the time and place set
8   forth in the caption hereof; that at said time and place
9   I reported in Stenotype all testimony adduced and other
10  oral proceedings had in the foregoing matter; that
11  thereafter my notes were reduced to typewriting under my
12  direction, and that the foregoing transcript, pages 1 to
13  145, both inclusive, constitutes a full, true and
14  accurate record of all such testimony adduced and oral
15  proceedings had, and of the whole thereof.
16
17
18        Witness my hand and CSR seal at Silverton,
19  Oregon, this 14th day of October, 2021.
20
21
22
23  _____
    D. Iwalani Carr
24  Certified Shorthand Reporter
    Certificate No. 90-0220
25  License expires 9/30/22

Carr Court Reporting
503-227-2277