**Date:**      September 23, 2019

**To:**        Lt. Dustin Newman

**From:**      Sgt. Tyrone Jenkins

**Subject:**   September 6, 2019 Use of Force, Case #19-2068

This Use of Force review is directed under Polk County Policy 5.01 (Use of Force) Section VII, Subsection B (Incident Review).

Under Subsection B (3) it states:

*The Sheriff's Office Review shall be based upon those facts, which were reasonably believed by the deputy at the time, applying legal requirements, office policy and procedures, and approved training to those facts.  Facts later discovered, but unknown to the deputy at the time, can neither justify nor condemn a deputy's decision regarding use of force.*

In summary, I will be evaluating the following three areas:
1. Legal Authority (State Law, Case Law and Federal Standards – Graham Factors)
2. Policy and Procedures
3. Training

I have reviewed the following attachments, which were provided to me from Lt. Dustin Newman.  Lt. Newman asked me to review Deputy Michael Smith's Use of Force regarding his arrest of Mr. Kevin Bratcher.

**ATTACHMENTS:**

- Memorandum from Sgt. Jason Ball to Lt. Dustin Newman
- PRIORS Incident Report #DAS19002068 by Dep. Michael Smith (Approved)
- PRIORS Supplemental Report #396644 by Sgt. Jason Ball (Approved)
- Dispatch CAD Response #DAS201909060021

Involved Deputies:  Dep. Michael Smith

Arrested Subject:  Mr. Kevin James Bratcher (DOB: 4/29/1976)


## POLICY REVIEW:

Policy 5.01 – Use of Force:
- No Violation of this policy.  I will reference listed ORS's from this Policy under the Legal Authority section.

Policy 6.05 – Search, Apprehension and Arrest:
- No Violation as his actions were covered under "Warrantless Searches".
  - Exigent Circumstances
    - Hot Pursuit

Policy 1.01 – Professional Ethics and Standards:
- Oath of Office – No Violation
- Mission Statement – No Violation
- Value Statement:
  - "We enforce the spirit of the law, ***using common sense, good judgement*** and compassion, all the while keeping in mind what is best for the community".
  - FINDINGS UNDER THIS POLICY:
    - *I believe common sense and good judgement may be difficult to corral at times, when <u>circumstances are tense, uncertain and rapidly evolving (Graham Factor).</u>  This will be addressed further under the TRAINING topic.*

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

- Law Enforcement Code of Ethics (Section IX – Professional Conduct):
  - "In the performance of his duty to serve society, a deputy is often called upon to make difficult decisions.  He must _**exercise discretion in his situations where his rights and liabilities and those of the Office hinge upon his conduct and judgement.**_  A deputy's decisions are not easily made, and occasionally they involve a choice, which may cause him hardship or discomfort.  A deputy must be faithful to his oath of office, the principles of his professional police service, and the objectives of the office; and in the discharge of his duty he _**must not allow personal motives to govern his decisions and conduct."**_
  - FINDINGS UNDER THIS POLICY:
    - *Deputy Smith's actions were not unprofessional, they were made immediately without him taking the time to think about the process, actions and possible consequences.  Again, this will be addressed under the TRAINING topic.*
- Law Enforcement Code of Ethics (Section IX, Subsection "C" – Courtesy).
  - "_**Effective law enforcement depends on a high degree of cooperation between the Sheriff's Office and the public it serves.  The practice of courtesy in all public contacts encourages understanding and appreciation; discourtesy breeds contempt and resistance.**_  The majority of the public are law-abiding citizens who rightfully expect fair and courteous treatment by Sheriff's Office employees. While the urgency of a situation might preclude the ordinary social amenities, _**discourtesy under any circumstances is indefensible**_. The practice of courtesy by a deputy is not a manifestation of weakness; it is, on the contrary, entirely consistent with the firmness and impartiality that characterizes a professional police officer."
    - FINDINGS UNDER THIS POLICY:
      - *Deputy Smith's initial contact with Mr. Bratcher and his comment about coming back at 3 a.m. seemed spiteful, more than informative.  **This comment by Dep. Smith was more likely than not the catalyst that set this incident in motion with Dep. Smith's actions.***
      - *Deputy Smith's return visit to Mr. Bratcher was problematic.  I believe this second contact would have been fine, if Dep. Smith just accepted the fact he was there to smooth it over and sub-serve Mr. Bratcher.  An apology followed up with a statement that he was legally authorized to attempt service at 3 a.m. was not needed.  This act was followed up*

*with the paperwork being flipped into the home. Tossing it in the house or just laying it on the front porch served the same purpose.*

- Policy 1.02 – Sheriff's Office Standards:
  - Section VIII – General Conduct, Section "C" Conduct Toward the Public.
    - "Members shall be courteous in all contacts with the public"
  - Section XI – Violations of Personal Conduct, Section "B" Controversial Conduct (5):
    - "Members shall not take their frustrations out on others or allow such frustrations to lead to injury or ***damage to persons or property.***
    - FINDINGS UNDER THIS POLICY:
      - *Deputy Smith initially advised Sgt. Ball during his briefing with him that he wasn't sure why he kicked open Mr. Bratcher's door, but later clarified that he was in hot pursuit. I would expect a clear answer of hot pursuit and not the initial answer to Sgt. Ball as not knowing why he had kicked the door. Was that action done due to frustration, or was it calculated enough to know the hot pursuit exemption applied? From the totality of circumstances up to the point of seizing Mr. Bratcher in his home and his statement to Sgt. Ball that he wasn't sure why he kicked open the door, leads an outside observer to believe Deputy Smith responded emotionally to the criminal act, rather than implementing cognitive thinking.*

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

## CONCLUSION

- Deputy Smith's Use of Force was Objectively Reasonable.
- Deputy Smith's Fourth Amendment Seizure of the property was lawful under Hot Pursuit.
- Deputy Smith contributed to this event due to his poor interpersonal skills with Mr. Bratcher, from his initial statement about returning at 3 a.m. and then his return trip to smooth things over.
- Deputy Smith also errored in his judgement by not slowing things down once the offensive littering crime was committed.
- Our office is also responsible for providing relevant critical thinking training, involving such decision making.
- During this review, I found no biases by Dep. Smith.

## CORRECTIVE ACTIONS

- Corrective Counseling Memorandum to Deputy Smith regarding two areas
  - Being Courteous in the face of ignorance
  - Decision Making
    - The need to slow down
    - Determine additional options when appropriate
- Training for the office
  - Work with Lt. Newman and Sgt. Kevin Haynes to put some critical thinking trainings together.  This would be a great time to introduce the "Priority of Life" (POL) scale – Force Science Institute training available.
  - NOTE:  Although our office is in need of this training, it does not mitigate Deputy Smith's known responsibility to be courteous and flexible with his decisions.