# Jenn Gaddis

| | |
|---|---|
| **From:** | Jenn Gaddis |
| **Sent:** | Monday, January 4, 2021 9:12 AM |
| **To:** | Kevin Lafky |
| **Cc:** | Maricela Highsmith; Jenn Gaddis |
| **Subject:** | Bratcher v. Polk Co et al |
| **Attachments:** | Polk County - Incident DAS19002068_20190906.pdf; SMP201909060157 CAD.pdf |

Good morning,

As discussed, we'll file our MOET today. Attached are the Polk County reports and our CAD on the incident.

Once you've had time to review, please let me know, and we can talk further. Thanks for being willing to discuss.

**Jenn Gaddis**
*Salem Deputy City Attorney*
City of Salem | Salem City Attorney's Office
555 Liberty St SE, Rm. 205, Salem, OR 97301
jgaddis@cityofsalem.net | (503) 588-6003
Facebook | Twitter |YouTube| CityofSalem.net

This message contains information which may be privileged, confidential, and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are strictly prohibited from disclosing, copying, distributing or using any of this information. If you received this communication in error, please contact the sender immediately and destroy the material in its entirety, whether electronic or hard copy. You may not directly or indirectly reuse or redisclose such information for any purpose other than to provide the services for which you are receiving the information.

1

Gaddis Suppl. Declaration
Ex. 2 - Page 1 of 16

# SALEM POLICE DEPARTMENT
## Response Report

| | | | |
|---|---|---|---|
| Case #: | | Primary Resource: | S543 |
| Response #: | SMP201909060157 | | **KRISTY FITZPATRICK** |
| Event Type: | **AOA** | | |

| | | | |
|---|---|---|---|
| Location: | 2701 ROOSEVELT LP NW (MapBook:3416), SALEM  (HOOVER AV NW/ROOSEVELT ST NW) | Origin: | CAD |
| Zone: | SMP05 | Priority: | 4 |
| D Group: | DIST 05 | Clear Code: | 00- CLEAR |

**Incident Notes:**

| | | |
|---|---|---|
| 09/06/2019 11:07:21 | Address of DAS201909060029 has been modified from 2701 ROOSEVELT LP NW to 2701 ROOSEVELT LP NW (MapBook:3416), SALEM  (HOOVER AV NW/ROOSEVELT ST NW). | RPADRTA |
| 09/06/2019 11:12:42 | P019 REQ CODE 3 COVER | RPADRTA |
| 09/06/2019 11:13:23 | 1 RESISTING | RPADRTA |
| 09/06/2019 11:13:28 | SMP ENRT X2 | RHAY |
| 09/06/2019 11:13:35 | C9 | RPADRTA |
| 09/06/2019 11:16:13 | S401: ARRRIVING SHORTLY... AM IN PLAIN CLOTHES | RHAY |
| 09/06/2019 11:16:33 | P019 - TEMP C4 . | RPADRTA |
| 09/06/2019 11:16:34 | S450 ARRIVING | RHAY |
| 09/06/2019 11:18:52 | S592: ONE MALE DETAINED | RHAY |
| 09/06/2019 11:20:11 | S401: CLR SCENE | RHAY |
| 09/06/2019 11:20:50 | C9 CLEAR | RPADRTA |
| 09/06/2019 12:19:45 | P033 WAS ADVISED BY A SALEM OFFICER THAT RESPONDED THAT A CSO COULD POSSIBLY BRING A SHEET OF PLYWOOD TO SECURE A FRONT DOOR ... | RPADRTA |

**Response Notes:**

| | | |
|---|---|---|
| 09/06/2019 12:35:51 | S543-DISPATCH | KFITZPAT |
| 09/06/2019 12:35:51 | (S543) S543 Status  has been changed to DISPATCH Agent:KFITZPAT Workstation:SMPA72161 | PPSS |
| 09/06/2019 12:35:55 | S543-CLEAR | KFITZPAT |
| 09/06/2019 12:35:55 | (S543) S543 Status  has been changed to CLEAR Agent:KFITZPAT Workstation:SMPA72161 | PPSS |

Page 1 of 1

Gaddis Suppl. Declaration
Ex. 2 - Page 2 of 16

# Crime/Incident Report

Print Date: 09/07/2019 16:16:30

**POLK COUNTY SHERIFF'S OFFICE**

| Case Id | Type Description | | Report Date |
|---|---|---|---|
| DAS19002068 | CRIME1 | MISCELLANEOUS CRIME 1 | 09/06/2019 11:07 |

| Location | Occurred From | Occurred To |
|---|---|---|
| 2701 ROOSEVELT LP NW | 09/06/2019 11:07 | 09/06/2019 12:37 |

| District | Linked Incident |
|---|---|
| DAS01 | |

Department Routing: ; DA

## SYNOPSIS

## OFFENSES

| OFFENSE | DESCRIPTION | LOCATION TYPE | UCR |
|---|---|---|---|
| 162.247 | Interfere with Police Officer | ROA | 999 |
| | BRATCHER DISOBEYED A LAWFUL ORDER TO STOP AFTER COMMITTING A CRIME | | |

## INVOLVED PARTIES

**ARRESTED**  BRATCHER, KEVIN JAMES
DOB: [redacted]  AGE: 43  SEX: M  RACE: WHI  WEIGHT: 210 lbs  HEIGHT: 6ft04in  HAIR:  EYE:
2701 ROOSEVELT LP NW, SALEM OR 97304
Home #: (   Bus #: (   Cell #: (971) 600-8992
SSN:   DLN: [redacted]

| CHARGE | DESCRIPTION | CNTS | WARRANT # | COURT |
|---|---|---|---|---|
| 164.805 | Offensive Littering | 1 | | CIRCUIT CT |
| 162.247 | Interfere with Police Officer | 1 | | CIRCUIT CT |

**OTHER**  BRATCHER, KEELY DEANIENE
DOB: [redacted]  AGE: 48  SEX: F  RACE: WHI
2701 ROOSEVELT LP NW, SALEM OR 97304
Home #: (   Bus #: (   Cell #: (503) 551-2514
SSN:   DLN: [redacted]

## PROPERTY

| Item # | Tag | Category | Make | Model | Serial # |
|---|---|---|---|---|---|
| 002 | D1902068P019002 | PHOTOS/FILM | | | |
| OAN | COLOR | NCIC | UCR: K. | | |

Description: **PHOTOS TAKEN BY SMITH**

| Ownership | Property Status Estimate | Property Status Estimate |
|---|---|---|
| Name: | Evidence: Y 1.00 | |
| Phone: | | |
| Address: | | |

Recovered/Seized From:
Name:
Address:
Phone:

Seizure
Location:
Officer:
Recovered Date:

| Item # | Tag | Category | Make | Model | Serial # |
|---|---|---|---|---|---|
| 003 | D1902068P019003 | RECORD AUD/VIS | | | |

PRIORS: geo911 Inc    Case ID: DAS19002068    Rep. Officer: P019 - SMITH, MICHAEL    Printed By: jasball    Page 1 of 6

Gaddis Suppl. Declaration
Ex. 2 - Page 3 of 16

| OAN | COLOR | NCIC | UCR | | |
|---|---|---|---|---|---|
| | | | K. | | |

**Description**
AUDIO RECORDING OF INCIDENT

| Ownership | | Property Status  Estimate | Property Status  Estimate |
|---|---|---|---|
| Name: | | Evidence: Y  1.00 | |
| Phone: | | | |
| Address: | | | |

| Recovered/ Seized From | Seizure |
|---|---|
| Name: | Location: |
| Address: | Officer: |
| Phone: | Recovered Date: |

| Item # | Tag | Category | Make | Model | Serial # |
|---|---|---|---|---|---|
| 004 | D1902068P019004 | DOCUMENTS | | | |
| OAN | COLOR | NCIC | UCR | | |
| | | | K. | | |

**Description**
DOCUMENTS DISCARDED IN THE STREET

| Ownership | | Property Status  Estimate | Property Status  Estimate |
|---|---|---|---|
| Name: | | Evidence: Y  1.00 | |
| Phone: | | | |
| Address: | | | |

| Recovered/ Seized From | Seizure |
|---|---|
| Name: | Location: |
| Address: | Officer: |
| Phone: | Recovered Date: |

| Item # | Tag | Category | Make | Model | Serial # |
|---|---|---|---|---|---|
| 005 | D1902068P019005 | DOCUMENTS | | | |
| OAN | COLOR | NCIC | UCR | | |
| | | | K. | | |

**Description**
MIRANDA CARD READ TO BRATCHER

| Ownership | | Property Status  Estimate | Property Status  Estimate |
|---|---|---|---|
| Name: | | Evidence: Y  1.00 | |
| Phone: | | | |
| Address: | | | |

| Recovered/ Seized From | Seizure |
|---|---|
| Name: | Location: |
| Address: | Officer: |
| Phone: | Recovered Date: |

## MO

## NARRATIVE

**OTHERS MENTIONED:**

Ball, Jason
Patrol Sergeant

PRIORS: geo911 Inc    Case ID: DAS19002068    Rep. Officer: P019 - SMITH, MICHAEL    Printed By: jasball    Page 2 of 6

Gaddis Suppl. Declaration
Ex. 2 - Page 4 of 16

Fagan, Tyler
Patrol Deputy

Brown, John
Volunteer
Sheriff's Auxiliary Law Enforcement Team (SALT)

Galusha, Chad
Patrol Officer
Salem Police Department

Donner, Jason
Patrol Officer
Salem Police Department

**NARRATIVE:**

On September 6, 2019 I was assigned to patrol duty with the Polk County Sheriff's Office. As part of my routine duties I selected several civil process papers that my office is required to serve in accordance with ORS 206.030. One of the documents to be served was a Notice of Small Claim addressed to Keely Bratcher at 2701 Roosevelt Loop NW in Salem. The location is within Polk County, Oregon. The document was part of case 19SC28316 being heard in the Polk County Circuit Court.

I knew that a Sheriff's Office volunteer, John Brown, had previously attempted to serve Ms. Bratcher with the paperwork on August 29, 2019. He had documented that Ms. Bratcher was uncooperative and refused to accept the service. He was not aware that Ms. Bratcher could not refuse service, so he returned the paperwork to the Sheriff's Office.

I arrived at Ms. Bratcher's residence at about 10:02 a.m. The door was answered by a male that I later identified as her husband, Kevin Bratcher. Mr. Bratcher told me that Ms. Bratcher was out of town on vacation (I later learned this was false), was uncooperative and argumentative, and insisted that the debt listed in the claim had already been paid. He offered to show me the receipt showing it had been paid.

I attempted to explain to Mr. Bratcher that my only job was deliver the paperwork, not to adjudicate whether or not the debt was legitimate, that the document contained information on how to dispute the claim, and also that avoiding service would not make the issue go away. I explained to Mr. Bratcher that this specific document could be served to anyone living with Ms. Bratcher, and asked if he would take it. As I explained these things Mr. Bratcher was arguing and speaking over me, and refused to accept the document.

Mr. Bratcher also refused to tell me when Ms. Bratcher would return from "vacation." I believed his claim that she was on vacation was false, so I suggested that another deputy may attempt service at 3:00 a.m. in order to try to contact her at a time she was home.

At the time I was not aware that another person residing with Ms. Bratcher could not refuse service, so I kept the paperwork with me with the intent to attempt to serve it at another time to Ms. Bratcher

| PRIORS: geo911 Inc | Case ID: DAS19002068 | Rep. Officer:P019 - SMITH,MICHAEL | Printed By: jasball | Page 3 of 6 |

personally.

At about 10:52 a.m. I received a call from Sergeant Jason Ball. He advised me that Mr. Bratcher had called to complain about me being "rude." I explained why I had suggested that the service might be attempted so late at night, and we discussed why that would probably not be a good course of action. Sergeant Ball also explained to me that even another resident could not refuse service of civil paperwork. He suggested I return to speak to Mr. Bratcher, attempt to make amends for my comment about attempting service late at night, and then I could serve it to him, regardless of whether or not he wanted to accept it.

I returned to the Bratcher residence at about 11:07 a.m. I had located his name in the Priors database and also reviewed his DMV photo to confirm his identity and the fact that he is a resident of the location. Because I did not want there to be any dispute or misunderstanding over the manner in which I spoke to Mr. Bratcher, I activated an audio recorder in my pocket.

Mr. Bratcher answered the door. I greeted him, confirmed that he was Mr. Bratcher, and advised him I was recording our conversation. He advised me that we were also being recorded by his Ring doorbell and at least one surveillance camera pointed at the front porch.

I told Mr. Bratcher that I had discussed my comment about returning at 3:00 a.m. with Sergeant Ball. I clarified with him that our office does not typically serve paperwork late at night and that Sergeant Ball had advised me that it would not be a good idea to do so.

I also explained to Mr. Bratcher that Sergeant Ball had advised me that Mr. Bratcher could not refuse service of the paperwork. I held out the document toward Mr. Bratcher and began to tell him, "you can take the paperwork out of my hand..." Before I could finish my sentence Mr. Bratcher turner around and walked into his house. As he was closing the door I tossed the paperwork into the house and advised him, "you've been served." I began walking back to my patrol car.

A few seconds later Mr. Bratcher came out yelling at me that I could not serve him the paperwork. I told him I already had, and I continued walking.

Mr. Bratcher walked to the end of his driveway and threw the paperwork out into the public street in front of his house, and then began walking back toward his front door. I knew this action constituted Offensive Littering as he had intentionally discarded what he considered to be trash onto a public way.

Because I had seen Mr. Bratcher commit a crime, I loudly and clearly ordered him to stop. Mr. Bratcher did not stop so I repeated my command as I began to run to catch up to him.

Mr. Bratcher's house had a large dumpster in the driveway so I briefly lost sight of him when he went around the corner of it. When I got around the corner I could see him standing inside his front door, making eye contact with me as I ran toward him. He began to shut his door.

As I ran toward the door I believed I could arrive prior to Mr. Bratcher being able to fully close and latch the door. I raised my foot to kick the door as I arrived, believing that it would swing open with minimal damage to the door. However, before I made contact with the door Mr. Bratcher had successfully closed the door and it had latched.

PRIORS: geo911 Inc    Case ID: DAS19002068    Rep. Officer:P019 - SMITH,MICHAEL    Printed By: jasball    Page 4 of 6

Gaddis Suppl. Declaration
Ex. 2 - Page 6 of 16

My foot landed in an area of the door in which the wood was relatively thin and the impact knocked out a large rectangle insert from the center of the door. The door itself did not open but my momentum carried me through the hole that had been created. The wooden insert came to rest on the floor just inside the door.

Mr. Bratcher was standing just inside the door. I took hold of his left arm and advised him he was under arrest. I tried to bring his arm behind his back in order to handcuff him, but he used his physical strength to resist my effort. I used my radio to call for emergency backup.

I gave Mr. Bratcher commands to get on the ground and to put his hands behind his back. He refused to do so and argued with me, demanding that I let him go. I warned him several times that I would Tase him, but after a few seconds I realized that although Mr. Bratcher was continuing to resist my attempt to place him into handcuffs, he was neither trying to assault me nor was he trying to flee. I decided to change my tactics while I waited for other officers to arrive.

At one point Mr. Bratcher had demanded to sit down, so I escorted him to a nearby staircase and he sat down there. Mr. Bratcher claimed that he could not be handcuffed behind his back. I asked him if he could be handcuffed in the front and he indicated he could be. I placed him into handcuffs in front of his waist, checked them for proper fit, and double locked them.

Mr. Bratcher indicated he needed to put his dogs in their kennels so I escorted him and assisted him in doing so. Once the dogs were secure he sat down in a chair the front room of the house. A few minutes later Officers Chad Galusha and Jason Donner arrived. Mr. Bratcher was still uncooperative and argumentative so I suggested it would be best to escort him to my patrol car where he could be secured.

We walked Mr. Bratcher to my car and placed him in the back seat. I allowed him to keep a medical device that he stated controlled an electric stimulator on his spine. He asked if he could have his phone to call his wife, so I returned to his house while the Salem officers waited with him. Once Mr. Bratcher was secured in my patrol car I stopped my audio recorder.

When I returned to the house I photographed the scene, including the paper Mr. Bratcher had thrown into the street and the damage to his door. The door had been opened when the Salem Police officers arrived but the wooden insert on the floor was in the same position where it had come to rest when I kicked it.

I located Mr. Bratcher's phone in the front room and brought it to him, where he used it to call his wife. I also collected the paper from the street, and later submitted it into evidence.

A few minutes later Sergeant Ball arrived at the scene. I explained to him what had happened. He instructed me to read Mr. Bratcher his Miranda rights, which I did. Mr. Bratcher told me he understood his rights. I asked him if he had any questions about them and his only question was to request to speak to Sergeant Ball.

Sergeant Ball spoke to Mr. Bratcher about the incident for several minutes. He advised me that Mr. Bratcher would be cited and released for his crimes, so I prepared a citation. Deputy Tyler Fagan removed the handcuffs from Mr. Bratcher as I did so.

I issued Mr. Bratcher the criminal citation for Offensive Littering and Interfering with a Peace Officer. I explained to him that he was required to personally appear at the date and time listed on the citation.

PRIORS: geo911 Inc    Case ID: DAS19002068    Rep. Officer: P019 - SMITH, MICHAEL    Printed By: jasball    Page 5 of 6

Gaddis Suppl. Declaration
Ex. 2 - Page 7 of 16

Case 3:20-cv-02056-HZ    Document 55-1    Filed 04/18/22    Page 8 of 16

Sergeant Ball escorted Mr. Bratcher back to his house to inspect the damage to the door. I waited at my patrol car until Sergeant Ball had completed his part of the investigation, and I left the scene.

## DISPOSITION:

Cleared by arrest.

## ATTACHMENTS:

Criminal citation 0200996.
CAD DAS201909060029.

### SUMMARY

| | | |
|---|---|---|
| **REVIEW STATUS:** APPROVED | **REVIEWED BY:** P006 | **DATE:** 9/7/2019 10:52:32AM |
| **INVESTIGATOR ASSIGNED:** | **ASSIGNED DATE:** | |
| **DEPT. CASE DISPOSITION:** ARREST | **DATE:** | |
| **UCR STATUS:** NA | **DATE:** 9/6/2019 11:41:15AM    **IBR EXEP CLEAR CLASS:** NA | |
| Reporting Officer<br>**P019    SMITH,MICHAEL** | Reviewed/Approved by<br>**P006    BALL,JASON SERGEANT** | Date Reviewed/Approved<br>**09/07/2019  10:52** |

PRIORS: geo911 Inc    Case ID: DAS19002068    Rep. Officer:P019 - SMITH,MICHAEL    Printed By: jasball    Page 6 of 6

Gaddis Suppl. Declaration
Ex. 2 - Page 8 of 16

## Incident Supplement

Print Date: 10/28/2019 03:57:09

**POLK COUNTY SHERIFF'S OFFICE**

| Case ID | Supplement ID | Occurred Date | Event Type |
|---|---|---|---|
| DAS19002068 | 396644 | 09/06/2019 11:07 | MISCELLANEOUS CRIME 1 |

**Location**
2701 ROOSEVELT LP NW

**Subject**
Actions on Scene

**Dept Routing**

### NARRATIVE

Narrative:

On 09/06/19 at approximately 1030 hours, I was on the on duty supervisor for the Polk County Sheriff's Office. I was also acting as a field training officer for Dep. Fagan. On this date and time I was contacted via phone at the Sheriff's Office by Kevin Bratcher, who lives at 2701 Roosevelt Lp NW in Salem. Mr. Bratcher advised he wanted to speak with a sergeant regarding Dep. Smith attempting to serve him civil paperwork at his residence in the name of his wife. The petitioner of the civil paperwork was Ray Klein Inc, DBA Professional Credit Service. The civil paperwork was a small claim notice for $560.43.

When I later reviewed the civil paperwork jacket I noted it was generated on 08/28/19 with a civil case number of 19-1513. I observed a note that stated "very uncooperative would not except paper." It's unknown who wrote the note.

Mr. Bratcher said Dep. Smith was rude and unprofessional. Mr. Bratcher told me his wife is out of state, which proved to be untrue as she was at work. Mrs. Bratcher works as a nurse at a veteran's hospital. Mr. Bratcher told me he had paid the debt related to the civil paperwork and offered to show Dep. Smith the receipt, but he declined. Mr. Bratcher said Dep. Smith then told him he would come out and serve him at 3 am. Mr. Bratcher said this was what upset him as he has children and didn't want them interrupted. I told Mr. Bratcher that generally speaking we do not serve civil paperwork after 9 pm. Mr. Bratcher also said that the company called to cancel the civil service and they talked to whomever they needed.

Mr. Bratcher said he did not wish to file a formal complaint and have Dep. Smith get into trouble, but rather wanted him talked to about being tactful. I told Mr. Bratcher I would speak with Dep. Smith and recontact him after I had done so.

Between speaking with Mr. Bratcher and Dep. Smith I contacted Civil Deputy Schmoyer and asked if we had gotten a cancellation for the civil paperwork for Mr. Bratcher. He said we had not. Dep. Schmoyer said this has happened a few times over the years. Dep. Schmoyer said if we knew Mr. Bratcher lived at the residence then he could be sub-served.

I contacted Dep. Smith and advised him of the complaint I had received from Mr. Bratcher. He said he

| Officer Id: P006 | Officer Name: BALL, JASON SERGEANT | Agency: DAS | Date: 9/6/2019 16:48 |
|---|---|---|---|
| Reviewed Status: APPROVED | Reviewed by: P007 - JENKINS, TYRONE SGT | | Date: 10/3/2019 17:53 |

PRIORS: geo911 Inc    Case ID: DAS19002068    Suppl. ID: 396644    Page 1 of 8

Gaddis Suppl. Declaration
Ex. 2 - Page 9 of 16

## Incident Supplement

Print Date: 10/28/2019 03:57:09

**POLK COUNTY SHERIFF'S OFFICE**

| Case ID | Supplement ID | Occurred Date | Event Type |
|---|---|---|---|
| DAS19002068 | 396644 | 09/06/2019  11:07 | MISCELLANEOUS CRIME 1 |

**Location**
2701 ROOSEVELT LP NW

**Subject**
Actions on Scene

**Dept Routing**

didn't feel like he was rude or unprofessional. He said Mr. Bratcher refused to be sub-served and admitted to telling him that he would come back at 3 am. I told him I thought there were hour restrictions on civil services, which ended at 9 pm. I told Dep. Smith I would talk with Dep. Schmoyer and get back with him. I later asked Dep. Schmoyer if there were specific hours civil processes can be served. He told me they can be served 24/7/365. I told Dep. Smith I had spoken with Dep. Schmoyer and that if we knew Mr. Bratcher lived at the residence he could be sub-served. I told Dep. Smith to go back to the residence and while I wasn't telling him he had to apologize it would be good to smooth it over. I told Dep. Smith while there he could sub-serve Mr. Bratcher and lay the civil paperwork at his feet. Dep. Smith said he was good with attempting to smooth things over. I asked Dep. Smith to let me know after he had done so and I would call Mr. Bratcher.

At approximately 1107 hours, Dep. Smith arrived and created a civil CAD. At approximately 1112 hours, Dep. Smith called for code three cover and stated he had one resisting.

At approximately 1125 hours, I arrived on scene and found Mr. Bratcher seated in the rear prisoner compartment on the passenger side with the door open. Dep. Smith and a Salem PD officer were standing near the open door. Mr. Bratcher was handcuffed with his hands in front and talking on a cell phone. I asked Dep. Smith if he was okay and he said he was.

I walked over to Dep. Smith's patrol car and noted he was on the phone with his wife. Mr. Bratcher was asking that his wife come home from work. He began relaying some of the events and told his wife that he could not be served with the civil paperwork as his name was not on it and it was against federal law. After Mr. Bratcher finished speaking with his wife I introduced myself to Mr. Bratcher. He asked to stand and I allowed him to stand up and walked to the back of the car. I asked Dep. Fagan to remove Mr. Bratcher's handcuffs. I then assisted Mr. Bratcher with providing a phone number for his wife. I later learned he asked his wife to call the company to find out why they had not contacted the Sheriff's Office to advise the civil paperwork was cancelled. Mr. Bratcher would also later tell me his wife was transferred to the legal department to figure out why the paperwork had not been cancelled. After Mr. Bratcher contacted his wife to have her call the company (at approximately 1207 hours) Dep. Schmoyer sent Dep. Smith an MDT message advising that the civil paperwork had been cancelled. I later learned Dep. Schmoyer had been contacted via phone and asked to cancel service of the civil paperwork. This was weill after Dep. Smith's initial and subsequent civil service attempts.

Mr. Bratcher agreed to speak with me about what happened and allowed me to record the

| Officer Id: P006 | Officer Name: BALL,JASON SERGEANT | Agency: DAS | Date: 9/6/2019 16:48 |
|---|---|---|---|
| Reviewed Status: APPROVED | Reviewed by: P007 - JENKINS,TYRONE SGT | | Date: 10/3/2019 17:53 |

## Incident Supplement

Print Date: 10/28/2019 03:57:09

### POLK COUNTY SHERIFF'S OFFICE

| Case ID | Supplement ID | Occurred Date | Event Type |
|---|---|---|---|
| DAS19002068 | 396644 | 09/06/2019 11:07 | MISCELLANEOUS CRIME 1 |

**Location:** 2701 ROOSEVELT LP NW
**Subject:** Actions on Scene
**Dept Routing:**

conversation with my cell phone. Mr. Bratcher asked if he could record it as well. I told him that was fine and after he couldn't figure it out I assisted him in starting the recording. I asked Mr. Bratcher to tell me what happened. Mr. Bratcher said after he talked to me he got a phone call back from the company that has the miscommunication between agencies for the paperwork. Mr. Bratcher said the account is paid in full and had been for weeks now. Mr. Bratcher said the doorbell rang and it was the deputy, Dep. Smith, started being apologetic. He said Dep. Smith told him that I was going to check to see if civil paperwork could be served at 3 am or if like I told him (Mr. Bratcher) it stopped at 9 pm. I advised Mr. Bratcher of my findings from my conversation with Dep. Schmoyer. Mr. Bratcher said Dep. Smith told him that I said he could be served. He said he told Dep. Smith he could not be served as his name was not on it. Mr. Bratcher said he had nothing to do with it and was not a party of it. He said he just paid the bill. Mr. Bratcher said he went to go back inside and he threw it in my door. He said he walked back out with it as Dep. Smith was taking off to his car and threw it out on the road. Mr. Bratcher said he told Dep. Smith "you can't serve me." He said he was walking back to his house and Dep. Smith "started chasing me." Mr. Bratcher said he was in his house and had already shut the door when Dep. Smith "foot kicked" the door, breaking it in. Mr. Bratcher said Dep. Smith's actions would have been caught by the cameras he has on his house.

Mr. Bratcher said once Dep. Smith was inside he grabbed a hold of his arm and pushed him against the wall. He said Dep. Smith was trying to do a reverse elbow lock and put him on the ground. Mr. Bratcher said he was trying to let Dep. Smith know that he had a medical implant device in his back. Mr. Bratcher said it was "shocking the hell out of me" as he is in a different position. Mr. Bratcher said it took several minutes for him (Dep. Smith) to understand he had a medical device. Mr. Bratcher said Dep. Smith finally let him sit down on the stairs and handcuffed him in front. Mr. Bratcher said he told Dep. Smith that his dogs would get out and run away if they weren't contained. Mr. Bratcher said Dep. Smith assisted him in getting them corralled. He said they then went upstairs and got his remote for his spinal stimulator at which point he was able to turn it down.

Mr. Bratcher said he called his wife in order to pick up the kids as he is the primary and a disabled veteran. He said that's when Salem PD showed up and were trying to "force me, they threw the phone down on the ground." Mr. Bratcher said the Salem PD officer was trying to take his remote from him. Mr. Bratcher said Salem PD officer was pushing him down the road and he asked to be let go saying he was not doing anything that was not compliant and had not done anything that was not compliant. Mr. Bratcher said and "now here we are right now with my house having no front door because it got busted in." He said he got "scraped up" from Dep. Smith.

| Officer Id: P006 | Officer Name: BALL,JASON SERGEANT | Agency: DAS | Date: 9/6/2019 16:48 |
|---|---|---|---|
| Reviewed Status: APPROVED | Reviewed by: P007 - JENKINS,TYRONE SGT | | Date: 10/3/2019 17:53 |

PRIORS: geo911 inc    Case ID: DAS19002068    Suppl. ID: 396644    Page 3 of 8

Gaddis Suppl. Declaration
Ex. 2 - Page 11 of 16

## Incident Supplement

Print Date: 10/28/2019 03:57:09

**POLK COUNTY SHERIFF'S OFFICE**

| Case ID | Supplement ID | Occurred Date | Event Type |
|---|---|---|---|
| DAS19002068 | 396644 | 09/06/2019 11:07 | MISCELLANEOUS CRIME 1 |

**Location**
2701 ROOSEVELT LP NW

**Subject**
Actions on Scene

**Dept Routing**

I later photographed Mr. Bratcher and noted he had a small bloody scrape on his left pinky finger and his knees appeared to be red. Mr. Bratcher told me several marks on his left arm were from something else.

I asked Mr. Bratcher where at in the roadway he threw the paperwork. He said "at the edge of the driveway." Mr. Bratcher said "I was in the driveway and it landed just on the other side of the driveway on the sidewalk." I don't recall when but when Mr. Bratcher was explaining how he threw the civil paperwork he talked about how he couldn't control where the wind took it. Mr. Bratcher said "and he said you're under arrest for littering and then after he kicked the door in he said I was under arrest for resisting arrest." I asked Mr. Bratcher when Dep. Smith told him he was under arrest for littering. He said whenever he got in the house. I told Mr. Bratcher it sounded like Dep. Smith told him to stop a couple of times after he had thrown the paperwork. He commented he threw it and was walking back and then said he has a "hearing issue." Mr. Bratcher said he didn't hear him until he got up to the door. He also said there is a dumpster in his driveway, which blocks sound. Mr. Bratcher again stated he had a hearing disability.

I asked Mr. Bratcher when Dep. Smith was trying to sub-serve him why not just take it and be done with it. He said "because it's paperwork that doesn't exist." He said it's been "null and void for two weeks." Mr. Bratcher also said it had been recalled by the agency and there is nothing to serve. I told Mr. Bratcher that Dep. Schmoyer had not received any notification from the company. I told Mr. Bratcher that I understood, but without notification we have to continue trying to serve the civil paperwork. Mr. Bratcher said after he spoke with me we should have waited a day to see if something came across and not come and throw a paper at him. I told Mr. Bratcher that was not the intent of Dep. Smith coming back out. Mr. Bratcher said Dep. Smith started out polite and then said he could serve him. Mr. Bratcher said he told Dep. Smith he couldn't serve him and walked back inside and Dep. Smith threw it at him and said 'you're served.'

I then followed Mr. Bratcher back to his residence and observed the damage to his door. I saw a window or glass insert that had been separated from the door itself, but was still intact. I saw there was some damage to the door and door frame. I noted the damage seemed minor.

Mr. Bratcher brought up the video from his Ring doorbell camera and allowed me to watch and I recorded it with my cell phone. He had both encounters with Dep. Smith recorded, which I then

| Officer Id: P006 | Officer Name: BALL, JASON SERGEANT | Agency: DAS | Date: 9/6/2019 16:48 |
|---|---|---|---|
| Reviewed Status: APPROVED | Reviewed by: P007 - JENKINS, TYRONE SGT | | Date: 10/3/2019 17:53 |

PRIORS: geo911 Inc    Case ID: DAS19002068    Suppl. ID: 396644    Page 4 of 8

Gaddis Suppl. Declaration
Ex. 2 - Page 12 of 16

## Incident Supplement

Print Date: 10/28/2019 03:57:09

**POLK COUNTY SHERIFF'S OFFICE**

| Case ID | Supplement ID | Occurred Date | Event Type |
|---|---|---|---|
| DAS19002068 | 396644 | 09/06/2019 11:07 | MISCELLANEOUS CRIME 1 |

**Location**
2701 ROOSEVELT LP NW

**Subject**
Actions on Scene

**Dept Routing**

---

recorded.

I observed Dep. Smith arrived and ring the doorbell at approximately 1110 hours according to the Ring doorbell. Dep. Smith confirms he's speaking with Mr. Bratcher and advises him that he's recording their conversation. Mr. Bratcher also advised he is recording and pointed toward his Ring doorbell camera. Dep. Smith said he wanted to come and smooth things over and said he understood that Mr. Bratcher thought he was rude. Mr. Bratcher interrupted and commented that Dep. Smith's earlier comment about serving the civil paperwork at 3 am was rude. Mr. Bratcher told Dep. Smith that I had clarified he could not be served past 9 pm. Mr. Bratcher said "that's what set me off." Dep. Smith told Mr. Bratcher that I was looking up the times civil processes could be served and added that we don't typically do that and that it's not a good idea. Dep. Smith said the reason he said that, referring to the 3 am comment, was that the civil had to get served one way or another. Mr. Bratcher said "it doesn't it's been recalled." Dep. Smith said the other thing I told him was that Mr. Bratcher could be served whether he wanted to be or not. Dep. Smith then told Mr. Bratcher he "can take the paper out of my hand" at which point Mr. Bratcher begins walking off and back into his residence. Dep. Smith tosses the paperwork into the residence and tells Mr. Bratcher "you've been served." When Dep. Smith tossed the paperwork into the residence he does so with an underhand flip and his hand and arm were in a low position. He does not throw the paperwork hard.

Mr. Bratcher then throws the paperwork out of his front door and it hits one of his columns. He exits his residence, grabs the civil paperwork, and makes his way down his driveway. While doing this he says "and you can't serve me because I'm not the person." A few seconds goes by and you can hear Dep. Smith yell for Mr. Bratcher to stop on two occasions. When Mr. Bratcher initially comes back into the frame he takes a step at a normal pace and then begins running toward his front door. Mr. Bratcher enters his residence and then Dep. Smith can be seen running up the driveway toward the front door. As Dep. Smith nears the front door he raises his right foot / leg and leads with it into the door. As Dep. Smith forces entry into the residence Mr. Bratcher asks what he is doing and Dep. Smith told him he's under arrest for littering. Dep. Smith told Mr. Bratcher "don't make me tase you." Mr. Bratcher can be heard yelling / asking Dep. Smith why he broke his door and Dep. Smith can be heard telling him to get on the ground. Mr. Bratcher can be heard telling Dep. Smith that he is a disabled veteran and needs to sit down. Dep. Smith advises Mr. Bratcher to put his hands behind his back or he will be tased.

The video then jumps to Salem PD arriving on scene. The camera appears to be a motion capture

| Officer Id: P006 | Officer Name: BALL, JASON SERGEANT | Agency: DAS | Date: 9/6/2019 16:48 |
|---|---|---|---|
| Reviewed Status: APPROVED | Reviewed by: P007 - JENKINS, TYRONE SGT | | Date: 10/3/2019 17:53 |

## Incident Supplement

Print Date: 10/28/2019 03:57:09

**POLK COUNTY SHERIFF'S OFFICE**

| Case ID | Supplement ID | Occurred Date | Event Type |
|---|---|---|---|
| DAS19002068 | 396644 | 09/06/2019 11:07 | MISCELLANEOUS CRIME 1 |

**Location**
2701 ROOSEVELT LP NW

**Subject**
Actions on Scene

**Dept Routing**

camera. The video ends after Dep. Smith and a Salem PD officer lead Mr. Bratcher out of his residence. They did not appear to be pulling or pushing Mr. Bratcher.

Mr. Bratcher then played the initial encounter with Dep. Smith, which was at approximately 1003 hours according to the Ring doorbell camera. Dep. Smith asks if Mrs. Bratcher was at the residence and Mr. Bratcher said no and asked "what is this about?" Dep. Smith tells him it's some civil paperwork and Mr. Bratcher asked who it was for again. Dep. Smith tells him it's for Mrs. Bratcher and added it looked like it was a collections notice. Mr. Bratcher asked who it was from and the recording cuts out for a moment and returns to Mr. Bratcher telling Dep. Smith he told the guy about it last week and said the same thing. Dep. Smith said he could let Mr. Bratcher read it or leave it with him. Mr. Bratcher said something like how could he be served with someone else's papers. Mr. Bratcher said if this is for Norco it's already been dealt with. Dep. Smith said he doesn't get involved with that. Mr. Bratcher interrupts Dep. Smith and I cannot understand what either is saying until Dep. Smith tells Mr. Bratcher "well, what we're gonna start doing is coming by at three in the morning and you can deal with it then I guess." Mr. Bratcher then loudly tells Dep. Smith "she's not here" and Dep. Smith asks if she lives at the residence. Mr. Bratcher said she does live at the residence and Dep. Smith asked when he could find her. Mr. Bratcher tells Dep. Smith he could find her when she returned from her vacation trip. Mr. Bratcher asked Dep. Smith to let him know who it's from and they could deal with it. Mr. Bratcher said they can't contact somebody if nobody will tell us what it's for. Dep. Smith opens the paperwork and Mr. Bratcher says "Norco" and says it's been paid. Mr. Bratcher said he could show Dep. Smith the receipt and Dep. Smith said that doesn't change the paperwork. Mr. Bratcher said it does change the paperwork and says it doesn't exist. Dep. Smith said all he's doing is serving paperwork. Dep. Smith asked when Mrs. Bratcher would be home and Mr. Bratcher said he didn't know. Dep. Smith said okay and we would try again as he walked away.

While speaking with Mr. Bratcher he told me to "wash" the criminal citation he had received from Dep. Smith as it was "BS." He told me I had the power to do so. I told him he would need to go through the DA's office regarding his charges. Mr. Bratcher said he could not afford to hire an attorney. I explained he could have an attorney appointed by the court if he qualified. He also asked about where to submit the bill to have his door fixed and who would fix his door. Dep. Fagan contacted Salem PD code enforcement about getting plywood out to temporarily fix the door. Dep. Fagan advised they would respond and see how they could assist. I relayed this information to Mr. Bratcher. Mr. Bratcher said he is currently in the middle of a remodel of his home and already has a new door on order, but it wouldn't be in until October 10th.

| Officer Id: P006 | Officer Name: BALL, JASON SERGEANT | Agency: DAS | Date: 9/6/2019 16:48 |
|---|---|---|---|
| Reviewed Status: APPROVED | Reviewed by: P007 - JENKINS, TYRONE SGT | | Date: 10/3/2019 17:53 |

PRIORS: geo911 Inc    Case ID: DAS19002068    Suppl. ID: 396644    Page 6 of 8

Gaddis Suppl. Declaration
Ex. 2 - Page 14 of 16

## Incident Supplement

Print Date: 10/28/2019  03:57:09

### POLK COUNTY SHERIFF'S OFFICE

| Case ID | Supplement ID | Occurred Date | Event Type |
|---|---|---|---|
| DAS19002068 | 396644 | 09/06/2019  11:07 | MISCELLANEOUS CRIME 1 |

**Location**
2701 ROOSEVELT LP NW

**Subject**
Actions on Scene

**Dept Routing**

I also later submitted a copy of a Norco receipt to the case file. The receipt was for $450 on 08/30/19 at 3:33 pm in name of Keely Bratcher. The receipt indicated it was paid via a VISA card. Mr. Bratcher provided this copy.

Action Recommended:

Attach to initial report

### OFFENSES

| OFFENSE | DESCRIPTION | LOCATION TYPE | UCR |
|---|---|---|---|
| 164.805 | Offensive Littering<br>BRATCHER INTENTIONALLY DISCARDED GARBAGE IN THE STREET | STR | |

### INVOLVED PARTIES

### PROPERTY

| Item # | Tag | Category | Make | Model | Serial # |
|---|---|---|---|---|---|
| 001 | D1902068P006001 | PHOTOS/FILM | | | |

**OAN**

**Description**
FIVE VIDEOS AND EIGHT PHOTOS

| Drug Type | Drug Weight | Quantity | Weapon | Size/Calibre | NCIC | UCR |
|---|---|---|---|---|---|---|
| | | 13 | | | | |

**Ownership**
Name:
Phone:
Address:

**Property Status** Estimate
Evidence: Y  1.00

**Property Status** Estimate

**Recovered/ Seized From**
Name:
Address:
Phone:

**Seizure**
Location:
Officer:
Recovered Date:

### VEHICLES

| Officer Id: P006 | Officer Name: BALL,JASON SERGEANT | Agency: DAS | Date: 9/6/2019  16:48 |
|---|---|---|---|
| Reviewed Status: APPROVED | Reviewed by: P007 - JENKINS,TYRONE SGT | | Date: 10/3/2019  17:53 |

PRIORS: geo911 Inc   Case ID: DAS19002068   Suppl. ID: 396644   Page 7 of 8

Gaddis Suppl. Declaration
Ex. 2 - Page 15 of 16

# Incident Supplement

Print Date: 10/28/2019  03:57:09

## POLK COUNTY SHERIFF'S OFFICE

| Case ID | Supplement ID | Occurred Date | Event Type |
|---|---|---|---|
| DAS19002068 | 396644 | 09/06/2019 11:07 | MISCELLANEOUS CRIME 1 |

**Location**
2701 ROOSEVELT LP NW

**Subject**
Actions on Scene

**Dept Routing**

### MO

| Officer Id: | P006 | Officer Name: | BALL,JASON SERGEANT | Agency: | DAS | Date: 9/6/2019 16:48 |
|---|---|---|---|---|---|---|
| Reviewed Status: | APPROVED | Reviewed by: | P007 - JENKINS,TYRONE SGT | | | Date: 10/3/2019 17:53 |

PRIORS: geo911 Inc   Case ID: DAS19002068   Suppl. ID: 396644   Page 8 of 8

Gaddis Suppl. Declaration
Ex. 2 - Page 16 of 16